UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ASKARI ABDULLAH MUHAMMAD,
F/N/A THOMAS KNIGHT,

             Petitioner,

v.                                              Case No. 3:05-cv-62-J-32

JAMES R. MCDONOUGH,[1] et al.,

             Respondents.

_____


**ORDER**[2]

**I. Status**

Petitioner Askari Abdullah Muhammad, formerly known as Thomas

Knight, is a death-sentenced inmate of the Florida penal system who

is represented by counsel.  He is proceeding in this action on a

Petition (Doc. #1) (hereinafter Petition) for writ of habeas corpus

filed pursuant to 28 U.S.C. 2254 on January 18, 2005.   He

challenges his state court (Bradford County) conviction for first

degree murder.

_____

[1] James R. McDonough and Bill McCollum are substituted for
James V. Crosby, Jr., and Charles J. Crist, Jr., as the proper
party Respondents pursuant to Rule 25(d)(1) of the Federal Rules of
Civil Procedure.

[2] Under the E-Government Act of 2002, this is a written
opinion and therefore is available electronically. However, it has
been entered only to decide the matter addressed herein and is not
intended for official publication or to serve as precedent.

The following ten grounds are raised in the Petition:

### GROUND I

MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BECAUSE HE WAS FORCED TO UNDERGO CRIMINAL JUSTICE PROCEEDINGS ALTHOUGH HE WAS NOT LEGALLY COMPETENT.

### GROUND II

MR. MUHAMMAD WAS DENIED THE ASSISTANCE OF COUNSEL CONTRARY TO FARETTA[3] AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### GROUND III

MR. MUHAMMAD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE COURT ORDERED DEFENSE COUNSEL NOT TO PRESENT AN INSANITY DEFENSE AND THE COURT'S RULING DEPRIVED MR. MUHAMMAD OF HIS RIGHT TO DEFEND.  THE TRIAL COURT'S RULING VIOLATED THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### GROUND IV

MR. MUHAMMAD WAS DENIED HIS RIGHTS AS A PRO SE DEFENDANT AT THE GUILT/INNOCENCE AND SENTENCING PHASES OF TRIAL IN VIOLATION OF MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.

### GROUND V

THE STATE'S MISCONDUCT THROUGHOUT THE GUILT AND PENALTY PHASES DENIED MR. MUHAMMAD HIS RIGHTS TO A FUNDAMENTALLY FAIR AND RELIABLE CAPITAL TRIAL AND SENTENCING DETERMINATION AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

---

[3] Faretta v. California, 422 U.S. 806 (1975).

2

GROUND VI

MR. MUHAMMAD'S DEATH SENTENCE IS NOT RELIABLE
AND MUST BE VACATED BECAUSE MR. MUHAMMAD WAS
NOT COMPETENT TO WAIVE HIS SENTENCING JURY,
BECAUSE THE TRIAL COURT FAILED TO CONDUCT
PENALTY PROCEEDINGS BEFORE AN ADVISORY JURY,
AND BECAUSE THE RESULTING SENTENCE OF DEATH
WAS CONTRARY TO THE FIFTH, SIXTH, EIGHTH, AND
FOURTEENTH AMENDMENTS.

GROUND VII

THE TRIAL COURT ERRED BY FAILING TO CONSIDER
MR. MUHAMMAD'S MENTAL DEFICIENCIES AS
NONSTATUTORY MITIGATING CIRCUMSTANCES AND
ERRED IN CONSIDERING NONSTATUTORY AGGRAVATING
FACTORS, IN VIOLATION OF THE SIXTH, EIGHTH,
AND FOURTEENTH AMENDMENTS.

GROUND VIII

MR. MUHAMMAD WAS DEPRIVED OF HIS RIGHTS TO DUE
PROCESS AND EQUAL PROTECTION UNDER THE FIFTH,
SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS
BECAUSE THE MENTAL HEALTH EXPERT RETAINED TO
EVALUATE HIM BEFORE TRIAL FAILED TO CONDUCT A
PROFESSIONALLY COMPETENT AND APPROPRIATE
EVALUATION, AND BECAUSE THE STATE FAILED TO
DISCLOSE CRUCIAL INFORMATION, DEFENSE COUNSEL
FAILED TO RENDER EFFECTIVE ASSISTANCE
DEPRIVING HIM OF A FAIR, INDIVIDUALIZED, AND
RELIABLE CAPITAL SENTENCING DETERMINATION.

GROUND IX

THE TRIAL COURT'S FAILURE TO GRANT MR.
MUHAMMAD'S MOTIONS FOR CHANGE OF VENUE AND FOR
INDIVIDUAL, SEQUESTERED VOIR DIRE DEPRIVED HIM
OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY IN
VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS.

GROUND X

MR. MUHAMMAD'S SIXTH, EIGHTH AND FOURTEENTH
AMENDMENT RIGHTS WERE VIOLATED BECAUSE NO
RELIABLE TRANSCRIPT OF HIS CAPITAL TRIAL

3

EXISTS AND CRITICAL RECORDS WERE NOT INCLUDED
IN THE RECORD ON DIRECT APPEAL, PRECLUDING
RELIABLE APPELLATE REVIEW.

Petition at 5, 15, 42, 50, 69, 91, 96, 105, 116, 124.

On June 15, 2005, Respondents filed their Response to Order to Show Cause Why Petition for Writ of Habeas Corpus Should Not Be Granted (Doc. #15) (hereinafter Response).  Petitioner's Reply to Response to Petition for Writ of Habeas Corpus (Doc. #19) (hereinafter Reply) was filed on August 12, 2005.

## II. Procedural History

On October 24, 1980, Petitioner was indicted for the first degree murder of Correctional Officer Richard James Burke.[4]  App.[5]

---

[4] At the time Correctional Officer Burke was murdered, Petitioner was on death row for the murders of a Miami couple.  See Knight v. State, 338 So.2d 201 (Fla. 1976) (per curiam). Petitioner Muhammad's original name was Thomas Knight.  While imprisoned, the Petitioner changed his name pursuant to his religious beliefs.

[5] The Court hereinafter refers to the Appendix submitted by Respondents in support of their Response on July 21, 2005, as "App."  The voluminous Appendix consists of exhibits A through Z and exhibits AA through EE.  Some of the exhibits consist of several volumes.  In citing these exhibits, the Court will first reference the letter of the exhibit, followed by the volume (hereinafter Vol.) number.  The Court notes that, although the Respondents refer to forty-six separately bound volumes in the Appendix, the Appendix received by this Court was not submitted in separately bound volumes.  Instead, loose pages bound by rubber bands were submitted, without tabs to assist the Court in finding the exhibits.  Furthermore, many of the pages were photocopied in a fashion that partially or totally obscured the page numbers on the bottom of the pages.  Court personnel spent approximately eight hours assembling and stapling the exhibits in the Appendix so that the pertinent portions of the record could be more easily located. In the future, the Court expects exhibits to be properly bound and tabbed for ease in locating pertinent exhibits.

R, Vol. 1 at 1-2.  After a trial by jury, at which Petitioner represented himself, he was found guilty as charged.  App. R, Vol. 3 at 442.  Petitioner waived his right to a jury for the penalty phase.  App. R, Vol. 10 at 4-12.  After considering the penalty phase evidence, the trial court imposed a death sentence, finding three aggravating factors (these three factors were that Petitioner was under a sentence of imprisonment at the time of the offense, that he was previously convicted of a capital offense, and that the murder was especially heinous, atrocious or cruel) and no mitigating circumstances.  App. R, Vol. 3 at 455-63.

On appeal to the Florida Supreme Court, Petitioner raised the following issues:

ISSUE I

THE COURT ERRED IN FINDING MUHAMMAD COMPETENT TO STAND TRIAL AS IT HAD INSUFFICIENT FACTS UPON WHICH TO FIND HIM COMPETENT.

ISSUE II

THE COURT ERRED IN ALLOWING MUHAMMAD TO REPRESENT HIMSELF AT TRIAL WITHOUT FIRST DETERMINING HIS COMPETENCE TO WAIVE ASSISTANCE OF COUNSEL AND TO REPRESENT HIMSELF.

ISSUE III

THE COURT ERRED IN EXCLUDING MUHAMMAD FROM PRESENTING ANY EVIDENCE OF HIS INSANITY AT TRIAL BECAUSE HE REFUSED TO BE EXAMINED BY COURT APPOINTED PSYCHIATRISTS IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

ISSUE IV

THE COURT ERRED IN FINDING AS AGGRAVATING
FACTORS THAT MUHAMMAD WAS UNDER SENTENCE OF
IMPRISONMENT WHEN HE COMMITTED THE MURDER AND
THAT HE HAD A CONVICTION FOR A PRIOR FELONY.

ISSUE V

THE COURT ERRED IN FAILING TO CONSIDER IN
MITIGATION EVIDENCE OF MUHAMMAD'S MENTAL
STATUS.

App. A at I.   The Florida Supreme Court affirmed Petitioner's

conviction and death sentence.   Muhammad v. State, 494 So.2d 969

(Fla. 1986) (per curiam); App. U.

Petitioner filed a petition for writ of certiorari to the

United States Supreme Court, raising the following issues:

ISSUE I

DID THE FLORIDA SUPREME COURT ERR IN
PERMITTING THE TRIAL COURT TO DETERMINE
MUHAMMAD'S COMPETENCY TO STAND TRIAL WITHOUT
CONDUCTING THE HEARING PRESCRIBED BY RULES
3.210 AND 3.211, FL.R.CR.P., BECAUSE MUHAMMAD
REFUSED TO BE EXAMINED BY COURT APPOINTED
PSYCHIATRISTS.

ISSUE II

DID THE FLORIDA SUPREME COURT ERR IN HOLDING
THAT THE STANDARD OF COMPETENCY A CRIMINAL
DEFENDANT MUST MEET IN ORDER TO REPRESENT
HIMSELF IS THE SAME AS THAT TO STAND TRIAL.

ISSUE III

DID THE FLORIDA SUPREME COURT ERR IN APPROVING
THE TRIAL COURT'S ACCEPTANCE OF MUHAMMAD'S
WAIVER OF HIS MENTAL HEALTH CONDITION AS A
MITIGATING FACTOR IN DETERMINING WHETHER TO
SENTENCE HIM TO DEATH.

App. D at I.   The petition for writ of certiorari to the United
States Supreme Court was denied on February 23, 1987.  <u>Muhammad v.</u>
<u>Florida</u>, 479 U.S. 1101 (1987); App. V.

On February 23, 1989, Petitioner filed a motion for post-
conviction relief pursuant to Fla. R. Crim. P. 3.850 (hereinafter
3.850 motion), in which he raised the following sixteen claims:

CLAIM I

>       MR. MUHAMMAD WAS DEPRIVED OF HIS RIGHTS TO DUE
>       PROCESS AND EQUAL PROTECTION UNDER THE
>       FOURTEENTH AMENDMENT TO THE UNITED STATES
>       CONSTITUTION, AS WELL AS HIS RIGHTS UNDER THE
>       FIFTH, SIXTH, AND EIGHTH AMENDMENTS, BECAUSE
>       THE MENTAL HEALTH EXPERT RETAINED TO EVALUATE
>       HIM BEFORE TRIAL FAILED TO CONDUCT A
>       PROFESSIONALLY COMPETENT AND APPROPRIATE
>       EVALUATION, AND BECAUSE DEFENSE COUNSEL FAILED
>       TO RENDER EFFECTIVE ASSISTANCE, RESULTING IN A
>       TRIAL AT WHICH MR. MUHAMMAD WAS INCOMPETENT
>       AND ENTITLED TO A COMPETENCY HEARING, IN THE
>       FAILURE TO ESTABLISH AN AVAILABLE INSANITY
>       DEFENSE, AND IN THE DEPRIVATION OF MR.
>       MUHAMMAD'S RIGHTS TO A FAIR, INDIVIDUALIZED,
>       AND RELIABLE CAPITAL SENTENCING DETERMINATION.

CLAIM II

>       MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH AND
>       FOURTEENTH AMENDMENT RIGHTS WERE ABROGATED
>       BECAUSE HE WAS FORCED TO UNDERGO CRIMINAL
>       JUDICIAL PROCEEDINGS ALTHOUGH HE WAS NOT
>       LEGALLY COMPETENT.

CLAIM III

>       MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH, AND
>       FOURTEENTH AMENDMENT RIGHTS WERE ABROGATED
>       BECAUSE HE WAS PERMITTED TO PROCEED WITHOUT
>       COUNSEL ALTHOUGH HE WAS NOT LEGALLY COMPETENT
>       TO EXECUTE A WAIVER OF COUNSEL.

7

CLAIM IV

THE DEATH SENTENCE IS NOT RELIABLE AND MUST BE
VACATED BECAUSE MR. MUHAMMAD WAS NOT COMPETENT
TO WAIVE HIS SENTENCING JURY, BECAUSE THE
TRIAL COURT FAILED TO CONDUCT PENALTY
PROCEEDINGS BEFORE AN ADVISORY JURY, AND
BECAUSE MR. MUHAMMAD FAILED TO PRESENT THE
WEALTH OF STATUTORY AND NONSTATUTORY EVIDENCE
AVAILABLE CONTRARY TO THE SIXTH, EIGHTH AND
FOURTEENTH AMENDMENTS.

CLAIM V

MR. MUHAMMAD WAS DENIED HIS FIFTH AMENDMENT
PROTECTION OF DOUBLE JEOPARDY AS PROVIDED BY
PRINCIPLES OF COLLATERAL ESTOPPEL IN VIOLATION
OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS.

CLAIM VI

MR. MUHAMMAD WAS DENIED EFFECTIVE, ADEQUATE
AND MEANINGFUL ACCESS TO THE COURTS AND A FAIR
OPPORTUNITY TO PRESENT HIS DEFENSES TO THE
TRIAL COURT BY THE FAILURE OF THE STATE OF
FLORIDA TO FULFILL ITS AFFIRMATIVE OBLIGATION
OF PROVIDING A LAW LIBRARY WITH WHICH MR.
MUHAMMAD COULD PREPARE DEFENSES IN VIOLATION
OF MR. MUHAMMAD'S SIXTH AND FOURTEENTH
AMENDMENT RIGHTS.

CLAIM VII

MR. MUHAMMAD'S SIXTH, EIGHTH AND FOURTEENTH
AMENDMENT RIGHTS WERE VIOLATED BECAUSE NO
RELIABLE TRANSCRIPT OF HIS CAPITAL TRIAL
EXISTS, RELIABLE APPELLATE REVIEW WAS AND IS
NOT POSSIBLE, THERE IS NO WAY TO ENSURE THAT
THAT WHICH OCCURRED IN THE TRIAL COURT WAS OR
CAN BE REVIEWED ON APPEAL, AND THE JUDGMENT
AND SENTENCE MUST BE VACATED.

CLAIM VIII

THE STATE'S DELIBERATE WITHHOLDING OF MATERIAL
EXCULPATORY EVIDENCE CONSTITUTED PROSECUTORIAL

MISCONDUCT AND VIOLATED MR. MUHAMMAD'S <u>BRADY</u>[6] AND FLORIDA DISCOVERY RIGHTS CONTRARY TO THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

CLAIM IX

THE TRIAL COURT ERRED BY FAILING TO CONDUCT AN ADEQUATE <u>FARETTA</u> INQUIRY AS TO WHETHER MR. MUHAMMAD MADE A VOLUNTARY, KNOWING AND INTELLIGENT WAIVER OF THE RIGHT TO COUNSEL.

CLAIM X

THE PROSECUTOR'S MISCONDUCT THROUGHOUT THE GUILT AND PENALTY PHASE[S] DENIED MR. MUHAMMAD'S RIGHT TO A FUNDAMENTALLY FAIR AND RELIABLE CAPITAL TRIAL AND SENTENCING DETERMINATION AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

CLAIM XI

MR. MUHAMMAD WAS INDICTED BY A BIASED GRAND JURY, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

CLAIM XII

THE TRIAL COURT ERRED BY FAILING TO CONSIDER MR. MUHAMMAD'S MENTAL HEALTH DEFICIENCIES AS MITIGATING CIRCUMSTANCES, WHICH MUST BE CONSIDERED REGARDLESS OF WHETHER THE MENTAL DEFICIENCIES RISE TO THE LEVEL OF STATUTORY MITIGATING CIRCUMSTANCES, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

CLAIM XIII

THE TRIAL COURT UNCONSTITUTIONALLY SHIFTED THE BURDEN OF PROOF WITH REGARD TO THE APPROPRIATENESS OF A SENTENCE OF LIFE IMPRISONMENT TO MR. MUHAMMAD, IN VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW, AND HIS

---

[6] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

RIGHTS UNDER THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### CLAIM XIV

MR. MUHAMMAD'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS WERE DENIED BY IMPROPER CONSIDERATION OF THE VICTIM'S CHARACTER AND VICTIM IMPACT INFORMATION.

### CLAIM XV

MR. MUHAMMAD WAS NOT PRESENT AT CRITICAL STAGES OF THE PROCEEDINGS AGAINST HIM RESULTING IN THE DEPRIVATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

### CLAIM XVI

ASKARI MUHAMMAD WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT BOTH THE GUILT-INNOCENCE AND SENTENCING PHASES OF HIS TRIAL, IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS WHEN THE COURT INSTRUCTED MR. REPLOGLE THAT HE WAS NOT TO PROVIDE ASSISTANCE OF COUNSEL.

App. S, Vol. 1 at 17, 39, 43, 48, 54, 65, 72, 80, 88, 102, 104, 107, 115, 117, 127, 134.

On April 24, 1989, Petitioner filed a supplement to the motion, in which he restated Claims I-III and Claims VII-XIV, see App. S, Vol. 1-2 at 141-205, 236-313, and amended claims IV, V, VI, XV and XVI as follows:

### CLAIM IV

THE DEATH SENTENCE IS NOT RELIABLE AND MUST BE VACATED BECAUSE MR. MUHAMMAD WAS NOT COMPETENT TO WAIVE HIS SENTENCING JURY, BECAUSE THE TRIAL COURT FAILED TO CONDUCT PENALTY PROCEEDINGS BEFORE AN ADVISORY JURY, AND BECAUSE THE RESULTING SENTENCE OF DEATH WAS

CONTRARY TO THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

CLAIM V

MR. MUHAMMAD WAS DENIED HIS FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS BECAUSE THE COURT INAPPROPRIATELY DECLINED TO APPLY LAW OF THE CASE AND COLLATERAL ESTOPPEL PRINCIPLES.

CLAIM VI

MR. MUHAMMAD WAS DENIED EFFECTIVE, ADEQUATE AND MEANINGFUL ACCESS TO THE COURT AND A FAIR OPPORTUNITY TO PRESENT HIS DEFENSES TO AT [SIC] TRIAL BY THE FAILURE OF THE STATE OF FLORIDA TO FULFILL ITS AFFIRMATIVE OBLIGATION OF PROVIDING A LAW LIBRARY WITH WHICH MR. MUHAMMAD COULD PREPARE DEFENSES, IN VIOLATION OF MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.

CLAIM XV

MR. MUHAMMAD WAS NOT PRESENT AT CRITICAL STAGES OF THE PROCEEDINGS AGAINST HIM AND THE COURT ENGAGED IN EX PARTE COMMUNICATIONS WITH THE STATE RESULTING IN THE DEPRIVATION OF MR. MUHAMMAD'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

CLAIM XVI

MR. MUHAMMAD WAS DENIED HIS RIGHT TO COMPULSORY PROCESS, THE RIGHT TO PRESENT A DEFENSE AND THE EFFECTIVE ASSISTANCE OF COUNSEL AT BOTH THE GUILT/INNOCENCE AND SENTENCING PHASES OF HIS TRIAL, BY ERRONEOUS PRETRIAL RULINGS IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

App. S, Vol. 2 at 205, 211, 222, 313, 320.

In the supplement to the 3.850 motion, Petitioner also raised the following two additional claims:

CLAIM XVII

THE TRIAL COURT'S FAILURE TO GRANT MR.
MUHAMMAD'S MOTIONS FOR CHANGE OF VENUE AND FOR
INDIVIDUAL, SEQUESTERED VOIR DIRE DEPRIVED HIM
OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY IN
VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS.

CLAIM XIX

THE "HEINOUS, ATROCIOUS AND CRUEL" AGGRAVATING
CIRCUMSTANCE WAS APPLIED TO PETITIONER'S CASE
WITHOUT ARTICULATION OR APPLICATION OF A
MEANINGFUL NARROWING PRINCIPLE, IN VIOLATION
OF <u>MAYNARD V. CARTWRIGHT</u>[7] AND THE EIGHTH AND
FOURTEENTH AMENDMENTS.

<u>Id</u>. at 352, 359.

On August 30, 1989, the trial court denied the motion, as
supplemented, finding that all of the claims were procedurally
barred because they should have been or were raised on direct
appeal. App. S, Vol. 7 at 1378-84. Petitioner appealed, and on
June 11, 1992, the Florida Supreme Court affirmed in part and
reversed in part, stating the following:

Askari Abdullah Muhammad, a prisoner
under sentence of death, appeals the trial
court's denial of his motion to vacate
judgment and sentence filed pursuant to
Florida Rule of Criminal Procedure 3.850. We
have jurisdiction pursuant to article V,
section 3(b)(1), Florida Constitution.

Muhammad was convicted of first-degree
murder for fatally stabbing a prison guard.
Muhammad's motion to proceed pro se was twice
denied by two separate judges, who later
recused themselves from the case. Muhammad's

_____

[7] <u>Maynard v. Cartwright</u>, 486 U.S. 356 (1988).

12

first trial ended in mistrial.  When Muhammad renewed his request to proceed pro se, a third judge ruled that Muhammad could represent himself.  The jury returned a guilty verdict. Muhammad waived his right to a jury recommendation in the penalty phase, and the trial judge sentenced him to death.  On appeal, this Court affirmed both the judgment and the sentence.  Muhammad v. State, 494 So.2d 969 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987). In February 1989, Muhammad sought collateral relief pursuant to Florida Rule of Criminal Procedure 3.850, which was summarily denied by the trial court.  Muhammad now appeals the trial court's denial of his motion for postconviction relief.

Of the eighteen claims presented in his 3.850 motion, Muhammad seeks review of the trial court's rejection of the following fifteen: 1) that summary denial was erroneous and the trial court erred in failing to either identify or attach the portion of the record that refutes each claim; 2) that Muhammad's rights were violated because no reliable transcript of the trial exists and critical records were not included in the record on direct appeal; 3) that Muhammad was denied effective assistance of counsel in violation of Faretta; 4) that Muhammad was denied due process and equal protection because the appointed mental health expert failed to conduct a professionally competent evaluation and this in turn caused counsel to render ineffective assistance; 5) that Muhammad was denied effective assistance of counsel by the court's order that defense counsel not present an insanity defense; 6) that Muhammad's rights were abrogated because he was forced to undergo criminal judicial proceedings although he was not legally competent; 7) that the death sentence was unreliable because Muhammad was not competent to waive his sentencing jury yet the penalty proceedings were not conducted before an advisory jury; 8) that Muhammad was denied his rights as a pro se defendant at both the guilt and penalty phases of the

13

trial; 9) that state misconduct throughout the
guilt and penalty phases denied Muhammad's
right to a fundamentally fair and reliable
capital trial and sentencing determination;
10) that the trial court's denial of
Muhammad's motions for change of venue and for
individual, sequestered voir dire deprived him
of his right to a fair and impartial jury; 11)
that Muhammad was indicted by a biased grand
jury; 12) that the trial court erred in
failing to consider Muhammad's mental
deficiencies as nonstatutory mitigating
circumstances and in considering nonstatutory
aggravating factors; 13) that the trial court
unconstitutionally shifted the burden of proof
with regard to the appropriateness of a
sentence of life imprisonment; 14) that the
jury and judge improperly considered the
victim's character and "victim impact"
information; and 15) that the "heinous,
atrocious, or cruel" aggravating circumstance
was applied without articulation or
application of a meaningful narrowing
principle in violation of <u>Maynard</u>.

We affirm the trial court's summary
rejection of claims two through eight, claim
nine with the exception of the <u>Brady</u>
violation, and claims ten through fifteen.
These claims are procedurally barred either
because the issue was not preserved at trial,
the issue was already raised and rejected on
direct appeal, or the issue could have or
should have been raised on direct appeal.
Issues which either were or could have been
litigated at trial and upon direct appeal are
not cognizable through collateral attack.
<u>Smith v. State</u>, 445 So.2d 323, 325 (Fla.
1983), <u>cert</u>. <u>denied</u>, 467 U.S. 1220, 104 S.Ct.
2671, 81 L.Ed.2d 375 (1984).

Muhammad also urges that the trial court
either should have granted an evidentiary
hearing on his motion for postconviction
relief or attached portions of the record that
conclusively show he was not entitled to
relief. However, rule 3.850 provides that
"[i]f the motion and the files and records in

14

the case conclusively show that the prisoner
is entitled to no relief, the motion shall be
denied without a hearing."   Thus, summary
denial was appropriate as to the claims which
the trial court found to be procedurally barred.
However, we agree with Muhammad that summary
denial was improper as to the State's alleged
failure to disclose exculpatory employee
statements in violation of <u>Brady v. Maryland</u>
(part of claim 9).   <u>Gorham v. State</u>, 521 So.2d
1067 (Fla. 1988).

In summarily denying this claim, the
trial court stated that "this is an issue that
should have been raised on direct appeal."
However, some claims arising under <u>Brady</u> are
proper in a rule 3.850 motion.   <u>Demps v.
State</u>, 416 So.2d 808 (Fla. 1982).   In this
case, Muhammad alleges that despite his
repeated requests for discovery the State
suppressed exculpatory statements of prison
employees who witnessed the offense.   He
further alleges that the State insisted that
it had no such statements, when in fact there
were such employee statements.   Muhammad
contends that these statements contained
exculpatory information regarding his mental
state at the time of the offense, and that he
was denied his right to effectively cross-
examine witnesses against him based on the
statements.   Because the trial court believed
that this point was inappropriate to a rule
3.850 proceeding, it did not address the
merits of whether the alleged <u>Brady</u> violation
would require a new trial.   Accordingly, we
reverse the trial court's ruling on the
alleged <u>Brady</u> violation and remand to the
trial court for an evidentiary hearing on this
issue.

<u>Muhammad v. State</u>, 603 So.2d 488, 488-90 (Fla. 1992) (footnotes

omitted).

The trial court attempted to schedule an evidentiary hearing

on January, 12, 1999; however, Petitioner moved for a determination

of competency.  App. T, Vol. 2 at 300, 322-24.  On February 10, 1999, the court appointed two experts to evaluate Petitioner's competency.  Id. at 384-88.  Petitioner was found to be competent by one of the appointed experts.[8]  App. T, Vol. 3 at 427-32.

On May 8, 2001, after conducting an evidentiary hearing, the trial court entered an order denying relief with respect to the guilt phase, but granting relief with respect to the sentencing phase.  App. T., Vol. 5 at 904-11.  Both parties appealed to the Florida Supreme Court, and Petitioner also filed a petition for writ of habeas corpus with the Florida Supreme Court, in which he raised the following claims:

CLAIM I

MR. MUHAMMAD'S RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE COURT INSTRUCTED MR. REPLOGLE THAT HE WAS NOT TO PROVIDE ASSISTANCE OF COUNSEL.  APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM ON APPEAL.

CLAIM II

MR. MUHAMMAD WAS NOT PRESENT AT CRITICAL STAGES OF THE PROCEEDINGS AGAINST HIM AND THE COURT ENGAGED IN EX PARTE COMMUNICATIONS WITH THE STATE, RESULTING IN THE DEPRIVATION OF MR. MUHAMMAD'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.  APPELLATE COUNSEL WAS

---

[8] The record before this Court does not contain the report of the other appointed expert or an order from the state court regarding competency.  Obviously, the state court must have found Petitioner competent to proceed since the evidentiary hearing on the 3.850 motion was thereafter held.

INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM ON
APPEAL.

### CLAIM III

MR. MUHAMMAD WAS DENIED MEANINGFUL ACCESS TO
THE COURTS AND A FAIR OPPORTUNITY TO PRESENT
HIS DEFENSES AT TRIAL WHEN THE STATE OF
FLORIDA FAILED TO FULFILL ITS AFFIRMATIVE
OBLIGATION TO PROVIDE A LAW LIBRARY WITH WHICH
MR. MUHAMMAD COULD PREPARE DEFENSES; THIS
FAILURE VIOLATED MR. MUHAMMAD'S SIXTH AND
FOURTEENTH AMENDMENT RIGHTS TO THE UNITED
STATES CONSTITUTION.  APPELLATE COUNSEL WAS
INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM ON
APPEAL.

### CLAIM IV

THE  TRIAL  COURT'S  FAILURE  TO  GRANT  MR.
MUHAMMAD'S MOTIONS FOR CHANGE OF VENUE AND FOR
INDIVIDUAL, SEQUESTERED VOIR DIRE DEPRIVED HIM
OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY IN
VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION.
APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING
TO RAISE THIS CLAIM ON APPEAL.

### CLAIM V

MR. MUHAMMAD WAS INDICTED BY A BIASED GRAND
JURY, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION.  APPELLATE  COUNSEL  WAS
INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM ON
APPEAL.

App. M at 6, 13, 22, 28, 41.

On  August 21, 2003, the Florida Supreme Court affirmed the
portion of the trial court's order denying post-conviction relief
with respect to the guilt phase, reversed the portion of the order
granting post-conviction relief with respect to the sentencing
phase, and denied the petition for writ of habeas corpus.  <u>State v.</u>

17

Knight, 866 So.2d 1195 (Fla. 2003) (per curiam).  Petitioner sought
review in the United States Supreme Court; however, the petition
for writ of certiorari was denied on May 24, 2004.  App. P; App. Y.

     As noted previously, the Petition was filed in this Court on
January 18, 2005.  Thus, Respondents concede that this action was
timely filed in this Court.  See 28 U.S.C. 2244(d)(1); Response at
20-21.

### III. Evidentiary Hearing

     "In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."
Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation
omitted).  "It follows that if the record refutes the applicant's
factual allegations or otherwise precludes habeas relief, a
district court is not required to hold an evidentiary hearing."
Id.

     This Court has carefully reviewed the record and concludes
Petitioner is not entitled to an evidentiary hearing.   The
pertinent facts of the case are fully developed in the record
before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th
Cir. 1999).  Thus, the Court can "adequately assess [Muhammad's]
claim[s] without further factual development."  Turner v. Crosby,
339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034

18

(2004).  Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review of state court adjudications:

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication
> resulted in a decision that was:  "(1) . . .
> contrary to, or involved an unreasonable[9]

---

[9] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. at 1939 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of</u>

20

<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).   <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).   Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).   The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064.   Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir.
2007). "Establishing these two elements is not easy: 'the cases in
which habeas petitioners can properly prevail on the ground of
ineffective assistance of counsel are few and far between.'" Van
Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir.
2002) (per curiam) (citations and footnote omitted), cert. denied,
537 U.S. 812 (2002), 537 U.S. 1105 (2003).

"The same standard applies whether [a court is] examining the
performance of counsel at the trial or appellate level." Eagle v.
Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (citing Matire v.
Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987)). "In considering
the reasonableness of an attorney's decision not to raise a
particular claim, [a court] must consider 'all the circumstances,
applying a heavy measure of deference to counsel's judgments.'"
Eagle, 279 F.3d at 940 (quoting Strickland v. Washington, 466 U.S.
668, 691 (1984)).

To determine whether Petitioner was prejudiced by his
attorney's failure to raise a particular issue on appeal, the Court
"must decide whether the arguments the [Petitioner] alleges his
counsel failed to raise were significant enough to have affected
the outcome of his appeal." United States v. Nyhuis, 211 F.3d
1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d
1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001).
"If [a court] conclude[s] that the omitted claim would have had a

reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle, 279 F.3d at 943 (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner raises the following claim in ground one:

> MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BECAUSE HE WAS FORCED TO UNDERGO CRIMINAL JUSTICE PROCEEDINGS ALTHOUGH HE WAS NOT LEGALLY COMPETENT.
>
> Mr. Muhammad's trial counsel filed a motion to determine his competency (R. 313-5). The court appointed two psychiatrists to conduct the examination, but Mr. Muhammad refused to see them (R. 368). The court appointed a third psychiatrist, Jamil Amin, a psychiatrist originally appointed to assist defense counsel, to examine Mr. Muhammad to determine his competency to stand trial (May 17, 1982 hearing, p. 58). After examining Mr. Muhammad, Dr. Amin found him competent.
>
> The court, based upon Dr. Amin's report and Mr. Muhammad's refusal to cooperate with the other psychiatrists, found Mr. Muhammad competent to stand trial (R. 388). However, the court violated Mr. Muhammad's right to due process. The court's reliance on only one expert, whose report was equivocal, at best, was error.

Petition at 5.

The following portions of the record are pertinent in assessing this claim. On October 20, 1980, Petitioner's defense attorneys, Joseph H. Forbes and Susan Cary, filed a Motion for

Appointment of Psychiatric Expert to Aid Defense, which states, in

pertinent part, the following:

> THOMAS KNIGHT, through his undersigned
> counsel, moves this Honorable Court to appoint
> an expert to assist his counsel in the
> preparation of his defense, pursuant to Fla.
> R. Crim. P. 3.216, and as grounds therefor,
> states:
>
> 1. Counsel has reason to believe
> that Thomas Knight may be incompetent or may
> have been insane at the time of the offense.
>
> 2. Counsel Susan Cary was
> appointed by The Honorable Gene Williams,
> Circuit Judge, Eleventh Judicial Circuit, to
> represent Thomas Knight for purposes of
> executive clemency proceedings which were held
> December 12, 1979. Prior to that appointment,
> Ms. Cary had had numerous lengthy
> conversations with Thomas Knight, over a two-
> year period, as the result of which it was her
> opinion that Thomas Knight was suffering from
> severe disabling mental illness.
>
> 3. During the course of her
> representation of Thomas Knight, Ms. Cary had
> him examined by a psychiatrist, Jamal Amin,
> M.D., of Tallahassee, and a clinical
> psychologist (expert in classification of
> prisoners), Brad Fisher, Ph.D., of North
> Carolina. Both doctors reported that Thomas
> Knight suffers major psychiatric illness.
>
> 4. Thomas Knight was previously
> committed to Northeast Florida State Hospital,
> Macclenny, Florida, as incompetent.
>
> 5. An insanity defense was raised
> at Thomas Knight's trial in 1975. Of the four
> experts who examined him, one found that he
> was legally insane at the time of the crime;
> the other three found that he suffered from

mental illness but that he did not meet the
M'Naughten [sic[10]] test for insanity.

      6.   Counsel has spoken with Dr.
Amin during the past week and he has indicated
his availability to re-examine Thomas Knight.
Counsel respectfully requests the appointment
of Dr. Amin to aid counsel at this time
because of his unique qualifications: he has
experience in forensic psychiatry,
particularly relating to prisons; he has
examined Thomas Knight, a Black man, on two
occasions within the past year; and he is the
only Black psychiatrist in the State of
Florida.  Dr. Amin's <u>curriculum</u> <u>vitae</u> is
attached to this Motion.  Dr. Amin is now in
the private practice of psychiatry in
Tallahassee.

App. R, Vol. 1 at 13-14.  On October 27, 1980, the motion was

granted, and Dr. Amin was appointed "as [an] expert to aid and

examine [the Petitioner] in order to aid counsel in preparation of

his defense[.]"  <u>Id</u>. at 34.

---

[10]    The landmark English rule in <u>M'Naghten's Case</u>,
10 Cl. & Fin. 200, 8 Eng. Rep. 718 (1843),
states that

"the jurors ought to be told . . .
that to establish a defen[s]e on the
ground of insanity, it must be
clearly proved that, at the time of
the committing of the act, the party
accused was laboring under such a
defect of reason, from disease of
the mind, as not to know the nature
and quality of the act he was doing;
or, if he did know it, that he did
not know he was doing what was
wrong."  10 Cl. & Fin., at 210, 8
Eng. Rep., at 722.

<u>Clark v. Arizona</u>, 126 S.Ct. 2709, 2718-19 (2006).

On January 14, 1981, Petitioner filed a *pro se* Motion to Proceed in Proper Person. Id. at 59. On January 21, 1981, The Honorable R.A. Green, denied the motion, stating, in pertinent part, the following:

> Counsel previously filed a suggestion of insanity and a psychiatric examination has been ordered by the Court.
>
> The Court is faced with an obviously intelligent man who exhibits symptoms consistent with extreme paranoia. Defendant's now relieved counsel has suggested Defendant's present incompetence and legal insanity. The Motion further described, or reported the Defendant having ". . . a severely disabling mental illness" . . . "a major psychiatric illness" and ha[ving] been committed to the state hospital as "incompetent."
>
> (From the foregoing it is apparent that present competency to stand trial is in issue -- especially if the allegation of a previous adjudication of incompetence is substantiated and a later restoration of competency is not proved.)
>
> At issue here is the Defendant's ability to waive representation of counsel (See Faretta v. California, ___ US ___) versus his right to the assistance of (representation of) counsel. (See Powell v. Alabama, ___ US ___).
>
> Under [Faretta], ability to represent oneself is required before counsel may be waived.
>
> In the instant case this Defendant is not so able either due to the particular factual circumstances of the case (death row incarceration/in-prison occurrence) OR alleged mental defects (incompetence, mental illness, insanity) or both.

App. R, Vol. 1 at 63-64.

26

On the same day, Judge Green recused himself from the case. Id. at 66.  On January 26, 1981, the Honorable Wayne M. Carlisle was assigned to Petitioner's case.  Id. at 172.

On February 25, 1981, defense counsel filed a Notice of Intent to Claim the Defense of Insanity.  App. R, Vol. 2 at 213.  On May 6, 1981, defense counsel filed a Statement of Particulars of Defense of Insanity, which states the following:

> COMES NOW the Defendant, THOMAS KNIGHT, by and through his undersigned attorney, and presents the following particulars relating to his reliance upon the defense of insanity:
>
> 1.  That the Defendant was suffering from the mental disease known as "schizophreniform", a form of paranoid schizophrenia, at the time of the offense. This assessment was made by the expert appointed by the Court, Dr. Jamal Amin, Post Office Box 5471, Tallahassee, Florida 32301.
>
> 2.  That the Defendant had been previously diagnosed as suffering from paranoid schizophrenia and has at one time been committed to a Northeast Florida State Hospital at Macclenny, Florida.
>
> 3.  That it is believed that the mental illness of THOMAS KNIGHT is demonstrated by records in his prison inmate records, as well as psychiatric records in prior criminal cases.

Id. at 253.

On May 7, 1981, the state filed a Motion Requesting Appointment of Experts Under FRCP 3.216(d)(e).  Id. at 255-56.  In response to this request, the court appointed Dr. George Barnard and Dr. Frank Carrera, III, to examine the Petitioner and to

27

present to the court their psychiatric evaluations of the Petitioner's present mental condition and his mental condition at the time of the offense. Id. at 258.  On July 9, 1981, Dr. Barnard wrote a letter to Judge Carlisle, stating that he and Dr. Carrera attempted to interview the Petitioner on July 4, 1981; however, the Petitioner refused to talk to them.  Id. at 274.  On October 2, 1981, Dr. Barnard wrote another letter to Judge Carlisle, stating the following:

> You recall following your court order, we attempted to examine psychiatrically Thomas Knight, Bradford County, case 81-341-CF, at the Florida State Prison on July 4, 1981.  At that time, we were informed by Lt. Herchel Wilson that inmate Knight had refused to talk with us.  On September 26, 1981, Dr. Carrera and I again attempted to interview the defendant Thomas Knight.  He was brought into the examining room and informed us his name had been changed to Askari Abdullah Muhammad and he showed the paperwork wherein his petition had been considered by the Honorable R. A. Green, Jr., April 7, 1981.  At that point in the interview he stated that the matter of his being in that room was a legal matter and he believed he had satisfied the court order by the correctional officers producing him in that room and he had nothing else to say.  He was asked if he understood that we were psychiatrists appointed by the court and he replied he had nothing else to say and terminated the interview.

Id. at 284.

On May 10, 1982, defense counsel filed a Motion for Court to Determine the Competency of the Defendant to Stand Trial.  Id. at 313-14.  In the motion, defense counsel informed the Court that he

was of the opinion that the Petitioner was not competent to stand trial because: (1) the Petitioner refused to communicate with counsel for the past several months; (2) the Petitioner refused to meet with or confer with the two psychiatrists appointed to evaluate him; (3) the Petitioner had a previous history of mental illness; and, (4) Judge Green had previously found that Petitioner could not represent himself, based in part on his mental state.

At a May 17, 1982, pretrial hearing, defense counsel stated that Dr. Amin could inform the court about the two or three interviews he had with the Petitioner.  App. R, Vol. 14, May 17, 1982, hearing transcript at 13.  Defense counsel stated, "I think on the issue of competency he could offer relevant testimony." Id. at 14.  The court then stated that the two previously-appointed doctors should make one more attempt to evaluate the Petitioner prior to the competency hearing.  Id. at 15.  Defense counsel informed the court that he would be offering Dr. Amin's testimony at the competency hearing, and that he thought it would be appropriate to give Dr. Amin the same access to the Petitioner that the other two doctors were going to have.  Id. at 16-17.  The judge then stated that he would not object to Dr. Amin being the third court-appointed psychiatrist to examine the Petitioner.  Id. at 17. Defense counsel replied, "All right, sir."  Id.  Then, the court directed Doctors Bernard, Carrera and Amin to make one last attempt to evaluate the Petitioner prior to the competency hearing.  Id.

29

On May 18, 1982, Dr. Carrera wrote a letter to Judge Carlisle, in which he described what occurred when he and Dr. Barnard made the final attempt to interview the Petitioner:

> Attempt #3 was on this date, i.e., 5/18/82 at FSP. The defendant was once again seen in an examination room where he had been brought by Corrections Officers. He corrected our referring to him as Thomas Knight and showed us a copy of the Court Order signed by the Honorable R. A. Green, Jr., legally changing his name to Muhammad. He then refused to speak further to us but did speak to the Officer present requesting to be taken back to his living area. The Officer encouraged him to stay and we encouraged him to verbalize his refusal to be examined if that was his wish. He rejected the Officer's suggestion and ignored ours.
>
> Since he has refused to be examined psychiatrically, we are unable to render a valid professional opinion as to Mr. Knight's competence to stand trial. We did review numerous relevant case materials provided by the defense attorney and the State Attorney but the data therein did not provide sufficient basis on which to make a decision as to whether or not he met the criteria for competency to stand trial or for involuntary hospitalization at this time.

Id. at 368.

Petitioner consented to speak with Dr. Amin, and on May 19, 1982, Dr. Amin submitted a report to Judge Carlisle, which states:

> PURPOSE
>
> Mr. Askari is a 31 year old black male seen in psychiatric evaluation at Florida State Prison in order to offer professional opinions concerning his competency to stand trial and to assist his attorney.

SIGNIFICANT HISTORY

This was approximately the fifth interview with Mr. Askari since December of 1979. In past interviews, I have indicated that Mr. Askari has been suffering for many years from a schizophreniform illness. For many years Mr. Askari has been a latent schizophrenic, complete with hospitalizations, who could and did decompensate under extreme environmental stress and/or the toxic effect of drugs.

PRESENT MENTAL HEALTH

Mr. Askari was well oriented to time, place, person, and situation. He was cooperative throughout the interview and apologetic for past refusals to meet me. His speech was very productive and focused on religion. His associations were rarely loose, but characterized in such terms that only someone familiar with the Islamic faith could find them significantly coherent. However, the connections between his thoughts were easier to follow on this occasion than on any others. He was very emphatic and explicit in explaining his defense strategy, whereby he desires to represent himself, and he was somewhat inappropriately concerned about any labels implying insanity.

However, thought content examination revealed no overt thought disorder at this time, and he demonstrated significant insight and appreciation for his present legal predicament.

IMPRESSIONS

Mr. Askari is mentally competent to stand trial. He can appreciate the seriousness of his situation. He knows the difference between right and wrong, and he is intact enough to assist in his defense.

App. R, Vol. 2 at 369-70.

On May 20, 1982, the court held a hearing on the Petitioner's competency, determined that Petitioner was competent to stand trial, and directed that an order so stating be prepared for his signature.[11]  App. R, Vol. 14, May 24, 1982, hearing transcript at 4.  At a May 24, 1982, hearing, counsel stated that they had not prepared a proposed order finding the Petitioner competent to stand trial; therefore, the court again directed counsel to prepare such an order.  Id. at 4-5.  On June 7, 1982, the court signed an order, nunc pro tunc May 20, 1982, which states the following:

> THIS CAUSE came on to be heard upon the Defendant's Motion for the Court to Determine the Competency of the Defendant to Stand Trial pursuant to Rule 3.210 and 3.212 Florida Rules of Criminal Procedure and the Court having appointed psychiatrists as requested and having reviewed the reported findings and opinions of Dr. Jamal Amin, M.D., Tallahassee, Florida and having observed the Defendant and as well having been further advised in the premises it is therefore

> ORDERED and ADJUDGED that the Defendant Thomas Knight is competent to stand trial under the provisions of Rule 3.210 and Rule 3.212 Florida Rules of Criminal Procedure.

App. R, Vol. 2 at 388.

On direct appeal, the Florida Supreme Court temporarily relinquished jurisdiction to the trial court "for the

---

[11] No court reporter was present at the May 20, 1982, competency hearing.  Therefore, the hearing was not transcribed. What occurred at the May 20, 1982, competency hearing was discussed at a May 24, 1982, hearing, which was transcribed.  See App. R, Vol. 14, May 24, 1982, hearing transcript at 4, 8.

reconstruction of the record on the hearing held May 20, 1982, at

Florida State Prison."   App. R, Vol. 15 at 3.   Part of this

reconstructed record consists of an Affidavit of Counsel, provided

by defense counsel, Stephen N. Bernstein.   Id. at 6-7.   He

described what occurred at the competency hearing as follows:

> On Ma[y] 20, 1982, the day after Dr. Amin's
> report became available, the Court held a
> hearing at Florida State Prison to determine
> competency pursuant to a motion filed by
> myself on behalf of the Defendant.  Present at
> this hearing were the Defendant, Thomas
> Elwell, Assistant State Attorney, myself, the
> Court, and a guard from Florida State Prison.
> Based on the refusal of the Defendant to speak
> with the other psychiatrists and the report
> filed by Dr. Amin, the Court found the
> Defendant competent to stand trial.  There was
> argument made on the State's motion to prevent
> use of the insanity defense but since there
> was no court reporter present the Court
> deferred ruling on that matter until the
> following week when a court reporter would be
> present and the record preserved.  There was
> also the matter of whether the Defendant was
> to be referred to as Askari Abdullah Muhammad
> or Thomas Knight.  This matter as well was
> once again reserved and ruled upon when a
> court reporter was present the following week.
>
> This consists of my total recollection of
> the brief hearing held on Ma[y] 20, 1982
> without the presence of a court reporter.

Id. at 7.

The prosecutor, Thomas Elwell, also provided an affidavit, in

which he described the May 20, 1982, hearing as follows:

> On May 20, 1982 at the courtroom facility
> at Florida State Prison, Starke, Florida I
> called up for hearing a Motion to Strike and
> Prevent the Defendant's use of the defense of

33

insanity.    At   the   same   time   Dr.   Amin's
psychiatric  evaluation  was  considered  by  the
Court  pursuant  to  a  defense  filed  Motion  to
Determine Competency.

The  Court  found  the  Defendant  competent
to  stand  trial  based  on  the  defense  expert
(Dr. Amin) report.

Argument  was  made  on  the  State's  Motion
to   Strike   the   Defense   of   Insanity   and   its
reliance  by  the  Defendant  since  he  failed  to
cooperate  with  the  court  appointed  examining
experts.   The  Court  would  not  rule  since  it
wanted  the  entire  matter  placed  on  the  record
the  following  Monday  prior  to  the  commencement
of   jury   selection   and   trial   in   the   above
cause.

Id. at 9-10 (paragraph enumeration omitted).

As noted previously, Petitioner raised the claims presented in

ground  one  as  his  first  issue  on  direct  appeal.    The  Florida

Supreme Court adjudicated the claim as follows:

Muhammad,   awaiting   execution   on   death
row,  fatally  stabbed  a  prison  guard  in  the
late  afternoon  of  October  12,  1980.    The
incident  apparently  arose  out  of  Muhammad's
frustration  at  being  denied  permission  to  see
a visitor after he refused to shave his beard.
In  the  past  Muhammad  had  been  issued  a  pass
excusing  him  from  shaving  regulations  for
medical  reasons.    A  guard  checked  with  the
medical   department   and   determined   that
Muhammad  had  no  current  exemption  from  the
rule.   At that time Muhammad was heard to say
he would have to start "sticking people."

James  Burke,  a  guard  on  a  later  shift  who
had   not   been   involved   with   the   shaving
incident,   was   routinely   taking   death   row
inmates one at a time to be showered.   When he
unlocked   Muhammad's   cell,   the   defendant
attacked  Burke  with  a  knife  made  from  a
sharpened  serving  spoon.    Muhammad  inflicted

34

more than a dozen wounds on Burke, including a
fatal wound to the heart.  The weapon was bent
during the attack, but Muhammad continued to
stab Burke, who attempted to fend off the
blows and yelled for help.  The other guard on
the prison wing saw the incident from a secure
position and summoned help from other areas of
the prison.   When help arrived, Muhammad
ceased his efforts and dropped the knife into
a trash box.

Two lawyers were initially appointed to
represent Muhammad.   One, Susan Cary, had
represented Muhammad in matters related to his
prior murder case.   The other was a public
defender.  The public defender withdrew after
differences arose with Cary.   For reasons
undisclosed in the record, the original trial
judge, Judge Green, ended Cary's appointment
and appointed Stephen Bernstein to represent
the defendant from the beginning of 1981.

The first indication in the record that
Muhammad desired to proceed pro se is found in
a transcript of a hearing that took place on
January 12, 1981 before Judge Green.  At the
hearing, Bernstein moved to withdraw and, as
the judge observed at the hearing, Muhammad
argued "eloquently and obviously with much
thought and consideration" to represent
himself.   Judge Green, advising Muhammad
against proceeding pro se, noted Muhammad
seemed competent to do so, but asked him to
"sleep on it" and write the judge a letter
with his final decision.  Muhammad wrote the
letter, electing to proceed pro se, but
insisting, as he had at the hearing, that he
wanted "assistance of counsel" in the sense of
having a lawyer available to aid in
preparation of the case.  January 21, 1981,
Judge Green recused himself for reasons not
known by or raised before this Court, and also
denied Muhammad's motion to proceed pro se.
Judge Green's order stated that Muhammad did
not have the capacity to conduct his own
defense either because of the difficulty of
preparing while on death row, or because of
incompetence, or both.

35

Muhammad's attorneys were concerned about his mental state from the start. Shortly after the murder, they had Dr. Amin appointed as a defense advisor pursuant to the newly adopted Florida Rule of Criminal Procedure 3.216(a). Dr. Amin had examined Muhammad in matters relating to his prior conviction. February 25, 1981, attorney Bernstein filed a notice of intent to claim the defense of insanity. June 10, 1981, Judge Carlisle, who had been appointed to replace Judge Green, filed an order appointing Doctors Barnard and Carrera, psychiatrists, to examine Muhammad to determine his competency to stand trial and his sanity at the time of the offense. Fla. R. Crim. P. 3.210(b) and 3.216(d). Muhammad refused to meet the doctors when they tried to examine him July 4, 1981, and met them but refused to cooperate at a second attempt that November.

Based on Muhammad's refusal to speak with the court-appointed experts, Judge Carlisle ruled in a hearing March 8, 1982, that Muhammad would not be allowed to present expert testimony regarding his insanity defense but that he would be allowed to raise the defense. Two weeks prior to the trial date of May 24, 1982, Bernstein filed a written proffer of the evidence and testimony he planned to present relating to the insanity defense.

The proffer included a summary of findings by a psychiatrist and psychologist who treated the defendant during a hospitalization at Northeast Florida State Hospital in 1971, suggesting he was suffering from early stages of schizophrenia. A clinical psychologist diagnosed the defendant a paranoid schizophrenic in 1975 after an examination for a competency hearing before the trial for the prior murders. The diagnosis was echoed by another psychologist in a 1979 evaluation. Finally, Dr. Amin's findings as a defense expert were summarized, including a diagnosis of "schizophreniaform

illness" but recommending further testing to
rule out epilepsy.

At a hearing May 17, 1982, a week before
trial, Bernstein requested a competency
hearing.  The judge agreed to a final effort
to have the two appointed psychiatrists
evaluate Muhammad.  At Bernstein's urging, the
judge also appointed Dr. Amin as a third
expert for the court evaluation.  Bernstein
also told the judge that Muhammad had refused
to meet with him for several months, and that
Dr. Amin had not spoken with Muhammad for
almost one year, although Dr. Amin had made
two attempts during that period.

A letter from Drs. Barnard and Carrera
states they were again rebuffed May 18, 1982,
and that they were unable to determine the
defendant's competency to stand trial, despite
"relevant case materials" provided by defense
and prosecution attorneys.  Dr. Amin was more
successful, meeting with the defendant and
determining that he was competent to stand
trial.  A letter to that effect was filed May
19.

May 20, 1982, Judge Carlisle, Bernstein,
the state attorney and Muhammad were present
at a competency hearing at Florida State
Prison.  The hearing was unrecorded, although
the judge had requested a reporter when the
hearing was set.  The reconstructed record
prepared by defendant's appellate counsel is
sketchy, but states that "[b]ased upon
Mohammad's [sic] refusal to cooperate with
Drs. Barnard and Carrera, and Dr. Amin's
report, the court found Mohammad [sic]
competent to stand trial.  What argument
defense counsel made in opposition to the
court's order is unknown."  Muhammad also
raised anew his request to proceed pro se.

Trial was begun May 24, 1982.  In a
hearing before voir dire began, Judge Carlisle
ruled that no evidence of any kind could be
presented concerning Muhammad's sanity at the
time of the crime.  Muhammad again moved to

proceed pro se and was denied.    The trial
ended in mistrial the next day for reasons
unknown and not raised to this Court.    Two
days later, Judge Carlisle filed a recusal and
Judge Chance was assigned to the case.    Judge
Chance conducted a hearing on Muhammad's
motion to proceed pro se June 7, 1982.    The
judge attempted to dissuade Muhammad,
explaining in detail disadvantages and
soliciting comment from Muhammad.    The hearing
ended with the ruling that Muhammad could
represent himself. Bernstein was appointed as
"standby" counsel, to step in should Muhammad
be unable to continue with trial.    Muhammad
also, for the first time, complained about the
competency interview with Dr. Amin.    He stated
that he thought Amin was meeting with him in
his capacity as a defense advisor, not as a
court-appointed expert.    He said he probably
would not have spoken with Dr. Amin had he
known the true circumstances of the interview,
just as he had not spoken to the other two
experts.    Although objecting to the
determination of competency based on the Amin
report, Muhammad did not move to strike the
report or suggest any other relief.

        Muhammad renewed his objection to the
Amin interview at a July 19, 1982 motion
hearing.

        Prior to trial the court allowed
Bernstein to withdraw as standby counsel and
appointed a public defender.    September 3,
1982, Muhammad filed a motion withdrawing his
notice of intent to use the insanity defense.
In a pretrial conference, the state withdrew
its motion to strike the insanity defense and
the judge granted Muhammad's motion.    At
trial, Muhammad's defense consisted solely of
holding the state to its burden of proof by
pointing out inconsistencies in the testimony
of the state's witnesses.    The jury found
Muhammad guilty as charged.    He waived his
right to a jury recommendation in the penalty
phase and the trial judge sentenced him to
death, finding nothing in mitigation and three
aggravating circumstances: the defendant was

38

under a sentence of imprisonment, he had been
convicted of a prior capital felony, and the
murder was heinous, atrocious or cruel.

COMPETENCY TO STAND TRIAL

Muhammad's appellate counsel first
challenges the findings by the trial court
that the defendant was competent to stand
trial and that he validly waived his right to
counsel.

Muhammad's competency is the primary
question in this case. As appellate counsel
for the defendant stated at oral argument, the
question is whether a person is competent if
he refuses to raise an insanity defense when
there is a substantial question of his sanity
at the time of the offense. However, that is
not the question to be answered regarding
competency. The standard of competency to
stand trial is this:

> A person is incompetent to stand
> trial within the meaning of this
> chapter if he does not have
> sufficient present ability to
> consult with his lawyer with a
> reasonable degree of rational
> understanding or if he has no
> rational, as well as factual,
> understanding of the proceedings
> against him.

§ 916.12(1), Fla.Stat.(1981).

Muhammad attacks the determination that
he was competent on the ground that it is not
supported by sufficient evidence. First, he
claims the trial court failed to follow the
dictates of Florida Rule of Criminal Procedure
3.210. The rule requires the court to appoint
"no more than three nor fewer than two
experts" to examine the defendant. However,
it does not require that the experts succeed
in examining the defendant. Muhammad refused
to cooperate on three separate occasions with
Drs. Barnard and Carrera. Dr. Amin's

39

examination found Muhammad competent.
Appellant refers us to <u>Ross v. State</u>, 386
So.2d 1191 (Fla. 1980), wherein we held that
an unequivocal finding of competency by one
expert is sufficient and it is not error to
refuse to appoint a second expert when the
defense fails to present evidence that further
examination is needed. Here, appellant
argues, Dr. Amin's report was not unequivocal
and the evidence in the proffer suggested the
need for further examination.

We find no merit in this argument. Three
experts had been appointed and the defendant
consistently refused to be examined by two of
them. There is no duty for the court to order
a futile attempt at further examination. A
defendant may not thwart the process by
refusing to be examined. The lack of expert
testimony under these circumstances is alone
not grounds for finding error. The reports of
experts are "merely advisory to the Court,
which itself retains the responsibility of the
decision." <u>Brown v. State</u>, 245 So.2d 68, 70
(Fla. 1971), <u>vacated in part on other grounds</u>,
408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759
(1972).

If the court has followed the procedures
of the rules and the defendant's own
intransigence deprives the court of expert
testimony, the court must still proceed to
determine competency in the absence of such
evidence. The record demonstrates that Judge
Carlisle had an opportunity to observe
Muhammad's behavior at the competency hearing,
to review a letter and various pleadings
handwritten by the defendant and a part of the
file,[12] and to review the proffer of expert

---

[12] The record reflects that Petitioner wrote a letter to Judge
Green on January 4, 1981, complaining that his First Amendment
rights were being violated and requesting injunctive relief because
the laws of Islam require him to wear a beard; however, prison
officials were punishing him for refusing to shave. App. R, Vol.
1 at 41-42. On January 7, 1981, Petitioner filed a Motion for
Injunctive Relief, again pertaining to the beard/shaving issue.

evidence.[13]   The proffer indicates Muhammad
suffered mental problems, but one need not be
mentally healthy to be competent to stand
trial.   Nothing in the record available to
Judge Carlisle dispositively demonstrates
Muhammad was incompetent.   <u>See</u> <u>Williams v.</u>
<u>State</u>, 396 So.2d 267 (Fla. 3d DCA), <u>review</u>
<u>denied</u>, 407 So.2d 1107 (Fla. 1981)
(probability that defendant was "more likely
than not" incompetent at time of trial
insufficient grounds to order new trial).
Muhammad's pleadings and behavior both before
and after the determination of competency
clearly indicate he had "sufficient present
ability to consult with his lawyer with a
reasonable degree of rational understanding
[and had a] rational, as well as factual,
understanding of the proceedings against
him."[14] § 916.12(1), Fla.Stat. (1982).   Even

---

<u>Id</u>. at 55-58.   On January 11, 1981, Petitioner wrote a letter to
the clerk, requesting that he be furnished with copies of his
indictment, all orders and pleadings filed in his case, and the
court's calendar.   <u>Id</u>. at 52.   On January 14, 1981, Petitioner
filed a Motion to Proceed in Proper Person, a Motion to Dismiss
Counsel, a Request for Copies of Pleadings and Orders, a Motion for
the Appointment of an Investigator, a Motion for the Assistance of
Counsel, a Demand for Discovery and a Request for Hearing on the
pending motions.   <u>Id</u>. at 49, 53-54, 59-60, 72-73, 174-76, 179-82.
On January 20, 1981, Petitioner wrote another letter to Judge
Green, in which Petitioner stated that he wished to represent
himself.   <u>Id</u>. at 67-71.   On January 22, 1981, Petitioner wrote a
letter to the clerk, noting that he had been informed that Judge
Green was recusing himself and requesting the name of the new
judge.   <u>Id</u>. at 170.

   [13] <u>See</u> App. R, Vol. 2 at 316-67, Written Proffer of Evidence
for Trial.

   [14] This Court has reviewed the *pro se* pleadings filed by
Petitioner in his criminal case and his letters to the court.   <u>See</u>
App. R, Vol. 1 at 41-42, 49, 52-60, 67-73, 170, 174-76, 179-82;
App. R, Vol. 2 at 382, 384, 390-99; App. R, Vol. 3 at 415-16, 418-
25, 427-40, 452-54, 466-67, 472.   The Court has also reviewed his
statements during the pretrial proceedings, jury selection and
trial.   <u>See</u> App. R, Vol. 4 at 7-8, 49-106, 145-76; App. R, Vol. 5
at 177-203, 247-62, 266-321; App. R, Vol. 6 at 331-34, 359-401,

if the Amin report were excluded, there is sufficient evidence to support the determination of competency.

In light of this conclusion, Muhammad's challenge to the Amin report cannot be sustained on any ground. However, we discuss the issue because the report buttresses the other evidence supporting the finding that Muhammad was competent.

Muhammad claims he did not know the purpose of Dr. Amin's competency examination, that neither his attorney nor Dr. Amin informed him of the reason for the interview, and that he thought he was meeting with Dr. Amin in the role of defense expert pursuant to his appointment under Florida Rule of Criminal Procedure 3.216(a), and thus his communications were protected by the attorney-client privilege of the rule. See State v. Hamilton, 448 So.2d 1007 (Fla. 1984).

We find no merit in this claim. Muhammad waived the privilege when he failed to object to submission of the report at the May 20, 1982 competency hearing. The record shows Judge Carlisle's handwritten annotation on the report that it was submitted as a *joint* exhibit, indicating that Bernstein waived any alleged privilege as to the report, and the reconstructed record does not indicate

---

427-47; App. R, Vol. 7 at 16-24, 31-34, 49-151, 159-64, 166-70, 174; App. R, Vol. 8 at 175-208, 214-29, 231-51, 259-76, 278-89, 293-312, 315-22, 325, 329-32, 334, 349-51; App. R, Vol. 9 at 352-406, 408-36, 438-41, 455-80, 506-07, 510; App. R, Vol. 10 at 4-12, 17-18, 22, 29, 45-59; App. R, Vol. 11 at 3-4, 6-7; App. R, Vol. 12, November 24, 1980, hearing transcript at 8-10, 12; App. R, Vol. 12, January 12, 1981, hearing transcript at 3-10, 17, 19; App. R, Vol. 12, July 19, 1982, hearing transcript at 4-21, 23-52, 54; App. R, Vol. 13, October 11, 1982, hearing transcript at 3-29, 34-36; App. R, Vol. 14, June 7, 1982, hearing transcript at 4-43; App. R, Vol. 14, May 24, 1982, hearing transcript at 12-23. These portions of the record reflect that the Petitioner was rational and articulate and that he appeared to understand the nature of the proceedings against him.

> Muhammad raised any objection to the waiver. <u>Compare</u> <u>Lebowitz v. State</u>, 313 So.2d 473 (Fla. 3d DCA 1975), <u>cert</u>. <u>denied</u>, 330 So.2d 19 (Fla.), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 429 U.S. 808, 97 S.Ct. 44, 50 L.Ed.2d 68 (1976) (defendant may impeach witness by eliciting psychiatrist's opinion as to competence of witness, but content of conversations with the witness is protected by psychiatrist-patient privilege of section 90.242, Florida Statutes (1973)).

> Muhammad also attacks the Amin report for alleged failure to include matters required by Florida Rules of Criminal Procedure 3.216(e) and 3.211(a)(1). A cooperative defendant objecting to admission of reports substantially deficient under these rules may well be entitled to have those objections sustained. <u>See</u> <u>Livingston v. State</u>, 415 So.2d 872 (Fla. 2d DCA 1982) (defendant entitled to new competency hearing when experts' testimony fails to show the matters outlined in rules 3.211 and 3.216 were considered). Muhammad neither cooperated nor objected. An expert's report is merely evidence for the court to utilize in determining competency. A determination of competency is not invalid because of deficiencies in a report unless the deficiencies substantially undermine the sufficiency of evidence supporting competency.

<u>Muhammad v. State</u>, 494 So.2d at 970-74 (footnotes omitted).

This Court must evaluate the Florida Supreme Court's adjudication of this claim pursuant to AEDPA. As an initial matter, the Court notes that a state court's finding of competency is a factual finding, which is presumed to be correct. <u>Demosthenes v. Baal</u>, 495 U.S. 731, 735 (1990).

> The <u>Demosthenes</u> decision requires a federal court to presume that a state court finding of competency is correct. <u>Id</u>.; <u>see</u> <u>also</u> <u>Hauser</u>, 223 F.3d at 1323 ("These subsidiary findings,

and the ultimate decision [of the state court] that Hauser is competent, are factual in nature and are entitled to a presumption of correctness."); 28 U.S.C. § 2254(e)(1). The presumed correctness of the state court finding can be overcome only if the party challenging the inmate's mental competency comes forward with evidence that clearly and convincingly establishes incompetency. <u>Hauser</u>, 223 F.3d at 1323. . . .

<u>Sanchez-Velasco v. Sec'y of the Dep't of Corr.</u>, 287 F.3d 1015, 1030 (11th Cir. 2002). Respondents contend, and this Court agrees, that Petitioner has not rebutted the state trial and appellate courts' findings of competency by clear and convincing evidence. <u>See</u> Response at 44-48.

This Court must also address whether the state courts' findings of competency were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Based upon the above-summarized portions of record, the trial and appellate courts' findings of competency to stand trial were based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

Next, the Court must address whether the Florida Supreme Court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law. "[I]n the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'"

44

Maharaj v. Sec'y for the Dep't of Corr., 432 F.3d 1292, 1308 (11th
Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

The United States Supreme Court has "repeatedly and
consistently recognized that 'the criminal trial of an incompetent
defendant violates due process.'"   Cooper v. California, 517 U.S.
348, 354 (1996) (quoting Medina v. California, 505 U.S. 437, 453;
Drope v. Missouri, 420 U.S. 162, 171-172 (1975); Pate v. Robinson,
383 U.S. 375, 378 (1966)).

> The test for incompetence is also well
> settled.  A defendant may not be put to trial
> unless he "'has sufficient present ability to
> consult with his lawyer with a reasonable
> degree of rational understanding . . . [and] a
> rational as well as factual understanding of
> the proceedings against him.'"   Dusky v.
> United States, 362 U.S. 402, 402, 80 S.Ct.
> 788, 4 L.Ed.2d 824 (1960) (per curiam).

Cooper, 517 U.S. at 354.

Upon review, the Florida Supreme Court's decision did not
contradict governing federal law.  In addition, there is no United
States Supreme Court case that is materially indistinguishable from
the facts of this case.  Next, the Court must inquire as to whether
the Florida Supreme Court's application of clearly established
federal law was objectively reasonable.  The Court finds that the
state court reasonably applied the law to the facts of Petitioner's
case.

In sum, Petitioner is not entitled to relief because the
Florida Supreme Court's decision was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Deference will be given to the Florida Supreme Court's ruling.[15]

## **B. Ground Two**

Petitioner raises the following claim in ground two:

> MR. MUHAMMAD WAS DENIED THE ASSISTANCE OF COUNSEL CONTRARY TO <u>FARETTA</u> AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Petition at 15. He divides this claim into four subsections.

In subsection A, Petitioner raises the following claim:

> MR. MUHAMMAD'S "WAIVER" OF HIS RIGHT TO COUNSEL WAS EQUIVOCAL AND INCOMPLETE UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND WAS NOT VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY MADE[.]

<u>Id</u>. at 30.

---

[15] Insofar as Petitioner contends in ground one that his rights were violated because he was not aware that Dr. Amin was evaluating him in May of 1982 as a court-appointed expert to determine his competency to stand trial, <u>see</u> Petition at 7, this Court agrees with the Florida Supreme Court that such a claim was waived because Petitioner did not object to the trial court's consideration of Dr. Amin's report at the May 20, 1982, competency hearing, and instead offered it as a joint exhibit. Furthermore, this claim is without merit for the reasons stated by the Respondents in their Response. <u>See</u> Response at 41-43. This Court also agrees with Respondents that any failure of the trial court to comply with the Florida Rules of Criminal Procedure in making the competency determination is an issue of state law that is not cognizable on federal habeas review. <u>See</u> <u>id</u>. at 40. Additionally, this claim is without merit for the reasons stated by the Respondents in their Response. <u>See</u> <u>id</u>. at 39-41.

Subsection B of this ground states the following:

> THE COURT ERRED IN FAILING TO CONDUCT AN
> ADEQUATE <u>FARETTA</u> HEARING TO DETERMINE THE
> MENTAL COMPETENCE OF MR. MUHAMMAD TO WAIVE HIS
> RIGHT TO COUNSEL AND TO CONDUCT HIS OWN
> DEFENSE <u>PRO</u> <u>SE</u>, CONTRARY TO THE SIXTH, EIGHTH,
> AND FOURTEENTH AMENDMENTS[.]

<u>Id</u>. at 34.

Subsection C of this ground raises the following claim:

> MR. MUHAMMAD'S WAIVER OF HIS RIGHT TO COUNSEL
> WAS NOT VOLUNTARY, KNOWING AND INTELLIGENT,
> CONTRARY TO THE SIXTH, EIGHTH, AND FOURTEENTH
> AMENDMENTS, DUE TO HIS LACK OF MENTAL
> COMPETENCE TO WAIVE COUNSEL AND TO CONDUCT HIS
> <u>PRO</u> <u>SE</u> DEFENSE[.]

<u>Id</u>. at 35.

Finally, subsection D of this ground states the following:

> THE COURT INTERFERED WITH THE ASSISTANCE OF
> APPOINTED STAND-BY COUNSEL CONTRARY TO THE
> SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS[.]

<u>Id</u>. at 38.

Petitioner raised portions of subsections B and C of ground two as his second issue on direct appeal (where he claimed that the court erred in allowing him to represent himself without first determining his competency to waive the assistance of counsel and to represent himself).  <u>See</u> App. A at 20-30.  The Florida Supreme Court adjudicated the claims on the merits.  <u>See</u> <u>Muhammad v. State</u>, 494 So.2d at 974-76.  Portions of subsections A, B and C of ground two were raised in state court as Claim IX in Petitioner's Rule 3.850 motion.  <u>See</u> App. S, Vol. 1 at 255-72.  The trial court found

47

that "Claim IX attacks the trial court's <u>Faretta</u> inquiry.  This issue was disposed of by the Florida Supreme Court."  App. S, Vol. 7 at 1380.  The court further found that each claim in the 3.850 motion "is procedurally barred and no cause has been shown or alleged that would excuse the default."  <u>Id</u>. at 1382.

On appeal, the denial of the <u>Faretta</u> claim was raised in Argument III of Petitioner's appellate brief.  <u>See</u> App. F at 18-40.  The Florida Supreme Court upheld the trial court's summary denial of the claim, finding that the issue was procedurally barred "either because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal."  <u>Muhammad v. State</u>, 603 So.2d at 489.

Thus, Respondents contend, and this Court agrees, that the claims raised in subsections A, B and C are cognizable only to the extent that they were raised on direct appeal.  The portions of the claims raised in subsections A, B and C that were presented for the first time in the 3.850 motion are procedurally barred.  An explanation follows.

Procedural default may result from non-compliance with state procedural requirements.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate

48

> state procedural rule.  <u>Wainwright v. Sykes</u>,
> 433 U.S. 72, 85-86, 97 S.Ct. 2497, 53 L.Ed.2d
> 594 (1977).   When a state court correctly
> applies a procedural default principle of
> state law, federal courts must abide by the
> state court decision, <u>Harmon v. Barton</u>, 894
> F.2d 1268, 1270 (11th Cir. 1990), but only if
> the state procedural rule is regularly
> followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424,
> 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). . . .

<u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), <u>cert</u>.

<u>denied</u>, 127 S.Ct. 1823 (2007); <u>see</u> <u>also</u> <u>Baldwin v. Johnson</u>, 152

F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may

not review a claim that a petitioner procedurally defaulted under

state law if the last state court to review the claim states

clearly and expressly that its judgment rests on a procedural bar,

and the bar presents an independent and adequate state ground for

denying relief), <u>cert</u>. <u>denied</u>, 526 U.S. 1047 (1999).

The procedural bar imposed in Petitioner's case is firmly

established and regularly followed in the Florida courts.   <u>See</u>

<u>Teffeteller v. State</u>, 734 So.2d 1009, 1016 (Fla. 1999) (holding

that substantive claims raised by post-conviction relief movant

were procedurally barred because they could have been raised on

direct appeal); <u>Smith v. State</u>, 445 So.2d 323, 325 (Fla. 1983)

("Issues which either were or could have been litigated at trial

and upon direct appeal are not cognizable through collateral

attack.").

"Procedural defaults in state courts will foreclose federal

court review, absent a showing of cause and prejudice." <u>Parker v.</u>

Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004).  "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar."  Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice."  Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

In his Reply, Petitioner states that he "raised the issue of the restrictions to the law library in his state court petition for writ of habeas corpus.  Therefore, he has asserted the cause and prejudice required in requesting that this Court consider the issue on the merits."  Reply at 17.  The issue regarding the restrictions on Petitioner's access to the law library was briefly mentioned in subsection A of this ground, where Petitioner argues that there

could be no effective waiver of his right to counsel because he did
not know that he would not have reasonable access to a law library.
<u>See</u> Petition at 33.

The underlying claim (restrictions on access to the law
library) has not been exhausted.  Instead, this issue was raised in
the state habeas petition as an ineffective assistance of counsel
claim for appellate counsel's failure to raise the claim on direct
appeal.  The Florida Supreme Court addressed this ineffectiveness
claim as follows:

> Next, Muhammad alleges that his appellate
> counsel was ineffective for failing to raise a
> claim based on the facts surrounding limits on
> Muhammad's access to the prison law library.
> We disagree.  The facts associated with this
> case necessarily limited Muhammad's options
> for defense because there was no issue of
> identity.  Moreover, Muhammad had chosen the
> additional self-imposed limitation of waiving
> any reliance on an insanity defense and
> electing to proceed pro se.  FN17  Before
> trial, Muhammad filed a "Motion to Use Law
> Library" arguing that he should be allowed to
> physically go and use the law library.  At a
> hearing on the motion, Muhammad explained that
> he had requested to use the law library at FSP
> from 1 a.m. to 3 a.m., but the prison
> superintendent had not replied to his request.
> For the record, the trial court asked Muhammad
> if he was denied all access to the FSP law
> library, and Muhammad explained that he could
> request materials from the law library, but he
> could not go to the law library in person.  At
> the hearing, the court asked Muhammad what
> legal materials he had been denied, and
> Muhammad replied that he had requested a case
> from the *Atlantic Reporter*, but the library
> did not have the *Atlantic Reporter.*  Muhammad
> did not refer to any other requested material
> and said that the law library should have to

51

get a copy of the material in question because
of his incarcerated status.    Ultimately,
Muhammad's motion was denied.

> FN17.    Indeed, before he elected
> to proceed pro se, Muhammad was
> specifically and repeatedly warned
> that he was likely to encounter
> problems investigating his case and
> doing legal research because of the
> circumstances of his incarceration.
> At a pretrial hearing in January of
> 1981, the judge told Muhammad: "You
> are incarcerated, you are charged
> with the killing of a man who was in
> charge of your incarceration. . . .
> [I]t is not physically possible for
> you, because of your incarceration
> to do the legal research someone
> should do for you."  The judge also
> suggested Muhammad would be "well
> advised to accept Mr. Bernstein's
> representation" and said that
> Muhammad would likely need a lawyer
> to "get law books" and for the
> lawyer's knowledge to prepare a
> defense.

> At the June 7, 1982, <u>Faretta</u>
> hearing, the trial court again
> explained to Muhammad that he would
> not be free of restrictions, that he
> would not have the same ability to
> conduct investigations and research
> as an attorney who was not
> incarcerated, and would be subject
> to severe difficulties as a pro se
> defendant.

Clearly, FSP was under no obligation to
grant Muhammad's request for physical access
to the law library in the middle of the night.
FN18  However, we do not need to reach whether
FSP's policy provided adequate access to the
law library, because Muhammad has failed to
show any prejudice from the policy.  Muhammad
was given access to the legal materials in the
library by request.   The only legal material

that Muhammad could identify that was not
given to him under FSP's policy was a copy of
an unspecified case in the *Atlantic Reporter,*
which was unlikely to have law relevant to
Florida and would not have assisted Muhammad
in preparing his defense. Therefore,
Muhammad's appellate counsel was not
ineffective for failing to raise this claim on
appeal.

FN18.    In Turner v. Safley, 482
U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d
64 (1987), the United States Supreme
Court held that a prison regulation
impinging on inmates' constitutional
rights "is valid if it is reasonably
related to legitimate penological
interests." Id. at 89, 107 S.Ct.
2254 (stating that "[s]ubjecting the
day-to-day judgments of prison
officials to an inflexible strict
scrutiny analysis would seriously
hamper their ability to anticipate
security problems and to adopt
innovative solutions to the
intractable problems of prison
administration"). In Bounds v.
Smith, 430 U.S. 817, 97 S.Ct. 1491,
52 L.Ed.2d 72 (1977), the Supreme
Court held that "the fundamental
constitutional right of access to
the courts requires prison
authorities to assist inmates in the
preparation and filing of meaningful
legal papers by providing prisoners
with adequate law libraries or
adequate assistance from persons
trained in the law." Id. at 828, 97
S.Ct. 1491. However, in Lewis v.
Casey, 518 U.S. 343, 116 S.Ct. 2174,
135 L.Ed.2d 606 (1996), the Supreme
Court considered the application of
Bounds and Turner to Arizona inmates
who were in "lockdown." Id. at 361,
116 S.Ct. 2174. The Court noted
that the inmates in lockdown were
the most dangerous and violent
prisoners in the Arizona prison

53

system.  <u>Id</u>.   The district court
found that lockdown prisoners were
"routinely denied physical access to
the law library," <u>id</u>. at 347, 116
S.Ct. 2174,   and   "routinely
experience[d] delays in receiving
legal materials or legal assistance,
some as long as 16 days." <u>Id</u>. at
362, 116 S.Ct. 2174. Nevertheless,
the Supreme Court found that the
district court had erred in failing
to accord adequate deference to
prison authorities, and that "so
long as [delays in receiving legal
materials or assistance] are the
product of prison regulations
reasonably related to legitimate
penological interests, such delays
are not of constitutional
significance, even where they result
in actual injury." <u>Id</u>. at 362, 116
S.Ct. 2174.

         The procedure used by FSP to
allow Muhammad access to the law
library is similar to the procedure
in Arizona that was tacitly approved
by the United States Supreme Court.
<u>See</u> <u>id</u>. at 361[, 116 S.Ct. 2174].
On its face, FSP's policy of not
allowing inmates like Muhammad, who
was charged with murdering a FSP
employee, to have physical access to
the library would appear to be
reasonably related to a legitimate
penological interest, i.e., the
safety of employees.

<u>State v. Knight</u>, 866 So.2d at 1207-08.

     This Court agrees that appellate counsel was not ineffective

for raising this claim because it would not have been meritorious

had it been raised on direct appeal.    In addressing whether

appellate counsel was ineffective for failing to raise the issue on

direct appeal, the Florida Supreme Court found the underlying claim (restrictions on Petitioner's access to the law library) to be without merit.  Thus, Petitioner was not prejudiced by appellate counsel's failure to raise this claim on direct appeal because the issue was not "significant enough to have affected the outcome of his appeal."  United States v. Nyhuis, 211 F.3d at 1344. Accordingly, appellate counsel's failure to raise this claim on direct appeal cannot serve as cause for Petitioner's default.

In sum, Petitioner has not shown cause and prejudice for the default.  Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, to the extent the claims raised in subsections A, B and C of ground two were not raised on direct appeal, the claims are procedurally barred.

The portion of the claims in subsections A, B and C that were raised on direct appeal were adjudicated by the Florida Supreme Court as follows:

### COMPETENCY TO WAIVE COUNSEL

Muhammad's appellate counsel next raises the question of whether Judge Chance properly granted Muhammad's motion to proceed pro se. Appellant urges that the judge failed to question whether Muhammad was competent to make the decision to waive counsel and to conduct his own defense.  Appellant relies on Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), wherein the Court held that, despite a prior determination of competency to stand trial, an inquiry must be made into whether a defendant is competent to waive his right to counsel and conduct his own defense.  See also Massey v. Moore, 348 U.S.

105, 75 S.Ct. 145, 99 L.Ed. 135 (1954): "One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel." Id. at 108, 75 S.Ct. at 147.

Appellant concedes that Judge Chance properly determined that Muhammad knowingly and voluntarily waived his right to counsel. The argument is that the judge should also have determined whether Muhammad was competent to do so and whether he was competent to proceed pro se. This would appear to be a bifurcated question: one might be competent to make the decision to waive counsel but still not be sufficiently competent to proceed on the consequences of that waiver, i.e. conduct the defense. However, Muhammad draws our attention to a unitary test adopted by the American Bar Association Standards for Criminal Justice, standard 7-5.3(b) (1984):

> The test for determining the competence to waive counsel and to represent oneself at trial should be whether the defendant has the present ability to knowingly, voluntarily and intelligently waive the constitutional right to counsel, to appreciate the consequences of the decision to proceed without representation by counsel, to comprehend the nature of the charge and proceedings, the range of applicable punishments, and any additional matters essential to a general understanding of the case.

Assuming the propriety of utilizing this test, Muhammad argues that the trial judge failed to adequately determine that he was competent. The alleged primary indicators that Muhammad was incompetent are his refusal to raise the insanity defense and his failure to introduce any evidence of his psychological problems in mitigation during the penalty phase. Appellate counsel also points to Muhammad's repeated insistence on being

56

referred to in court and in the style of the
case by his Moslem name and his rambling
discourses during hearings and at trial.

We reject the argument of counsel. In
Faretta v. California, 422 U.S. 806, 95 S.Ct.
2525, 45 L.Ed.2d 562 (1975), the Supreme Court
found that the defendant should have been
allowed to waive counsel because "[t]he record
affirmatively shows that Faretta was literate,
competent, and understanding, and that he was
voluntarily exercising his informed free
will." 422 U.S. at 835, 95 S.Ct. at 2541.
This is the appropriate standard to apply in
the instant case, Jones v. State, 449 So.2d
253 (Fla.), cert. denied, 469 U.S. 893, 105
S.Ct. 269, 83 L.Ed.2d 205 (1984), and the
record supports Muhammad's waiver.

Judge Chance conducted a lengthy and
detailed inquiry pursuant to the requirements
of Faretta[16] before accepting Muhammad's
waiver with this finding:

> I personally think you're
> making a mistake, I really do, but
> that is your decision. And I'm
> convinced from talking with you and
> from the time we spent here today
> that you're competent and capable to
> make a mistake. Everybody can make
> a mistake. I made a mistake last
> week and blew the engine on my car.
> I can do that. You can make a
> mistake just like I did.
>
> If you want to, and all I want
> to make sure today is, that you know
> what you're doing and that's what
> you want to do. Now, I'm not going
> to stand in your way, although I
> don't think you're making a good
> decision. But that's - I'm not
> going on trial and so I don't have

---

[16] See App. R, Vol. 14, June 7, 1982, hearing transcript at 5-36.

that decision to make.  So I'm going
to grant your motion.

Judge Chance's ruling sums up the dilemma
of permitting a defendant to proceed pro se.
It also embodies a determination of competency
and compliance with the Faretta standard.

The Faretta standard does not require a
determination that a defendant meet some
special competency requirement as to his
ability to represent himself.  The Faretta
Court noted that the question of whether the
defendant had sufficient technical legal
skills to represent himself was irrelevant to
waiver of counsel.  If one may be
intellectually incompetent in legal skills yet
waive counsel, then no standard of mental
competence beyond competence to stand trial is
required.  Mental competency in the context of
Faretta only relates to the ability to waive
the right to counsel.  Competency may be,
however, only one of several factors to be
considered when a defendant waives a right, as
in the case of waiver of counsel - Faretta
requires that the court find that the
defendant is not only competent, but also
"literate . . . and understanding, and that he
[is] voluntarily exercising his informed free
will."  422 U.S. at 835, 95 S.Ct. at 2541.
The requirements of literacy and understanding
appear to be the factors suggested in Massey,
which in combination with competency
constitute "capacity to stand trial without
benefit of counsel."  348 U.S. at 105, 75
S.Ct. at 145.

Inherent in appellant's argument is the
assumption that the level of competency
necessary to waive counsel is greater than the
level required to simply stand trial.
Competency to waive counsel is at the very
least the same as competency to stand trial.
Faretta.  Judge Chance's determination of
competency avoided reliance on Dr. Amin's
report (to which Muhammad had objected earlier
in the hearing).  Thus, whatever claim of
error that might be raised regarding the

initial determination of competency to stand
trial in reliance on the Amin report is mooted
by Judge Chance's determination without
reliance on the report that Muhammad was
competent to waive counsel.

Appellate counsel also argues that the
judge should have appointed experts for a
determination of competency regarding the
waiver and self-representation. Counsel
claims Muhammad asked for an examination on
this point, but it is clear from the context
of his statement that his intention was that
Dr. Amin consult with him as a defense expert
under Florida Rule of Criminal Procedure
3.216(a), and nothing indicates that Muhammad
had changed his position regarding the other
experts. Also, the <u>Faretta</u> hearing occurred
less than a month after the prior
determination of competency to stand trial and
nothing in the record suggests that Muhammad's
mental condition had changed in the interim
necessitating another, most likely futile,
attempt at expert evaluation.

Appellate counsel's alleged indicia of
incompetence are without merit. Muhammad's
refusal to cooperate in raising an insanity
defense is not in itself an indicator of
incompetence. The record shows that Muhammad
adamantly refused to seek any excuse for the
murder based on his mental condition,
apparently based on his interpretation of
Moslem teachings that he should take
responsibility for his actions. Society
permits a defendant to seek refuge in an
insanity defense; it does not require it. <u>Cf</u>.
<u>Alvord v. State</u>, 396 So.2d 184 (Fla. 1981)
(trial counsel not ineffective for failing to
convince defendant to plead insanity defense).
One might have been legally insane at the time
he commits a crime, but, so long as he is
subsequently competent to make the decision,
he may refuse to seek excuse.

Muhammad's insistence on use of his
Moslem name is likewise not an indicator of
incompetence. In fact, his attention to this

> detail is consistent with his entire behavior,
> which seems to be guided by his interpretation
> of Moslem dictates.  His refusal to shave was
> apparently   based   on   his   perception   of
> religious principle, and the murder may be
> viewed   as   his   taking   a   stand   on   this
> principle.  Insistence on recognition of the
> Moslem   name   is   another   manifestation   of
> Muhammad's desire to stand on principle.  A
> prisoner on death row lives in a world of
> extremely limited options, and standing on
> principle on matters such as this, which might
> appear   to   be   minor   annoyances   to   a   free
> person,   can   easily   take   on   far   greater
> significance to a prisoner to whom a shaving
> pass may constitute a victory of will amidst
> multitudinous defeats.
>
> We   have   reviewed   in   detail   Muhammad's
> alleged ramblings at hearings and trial and
> find them wordy and at times flowery, but they
> clearly demonstrate an intelligence well aware
> of   what   is   going   on   and   responding   in   an
> appropriate manner.

Muhammad v. State, 494 So.2d at 974-76.

The Florida Supreme Court correctly identified Faretta as the controlling legal precedent.  Upon thorough review of the record, this Court concludes that Petitioner is not entitled to relief on the basis of this claim because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Deference will be given to the state court ruling.

As   noted   previously,   in   subsection   D   of   this   ground, Petitioner contends that the trial court interfered with the

60

assistance of stand-by counsel.  Petitioner states that he raised this issue in his habeas petition filed in state court.  <u>See</u> Petitioner's Supplement to Petition for Writ of Habeas Corpus (Doc. #8) at 2.  However, in the state habeas petition, the issue was raised as an ineffective assistance appellate counsel claim for appellate counsel's failure to argue that the trial court interfered with the assistance of stand-by counsel.  <u>See</u> App. M at 6-13.  Thus, Respondents contend, and this Court agrees, that the underlying claim that the trial court interfered with the assistance of stand-by counsel is procedurally barred.  <u>See</u> Response at 64-65.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  <u>See</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 349, <u>reh'g</u> <u>denied</u>, 490 U.S. 1076 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>Turner</u>, 339 F.3d at 1281 (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'"  <u>Turner</u>, 339 F.3d at 1281 (quoting <u>O'Sullivan</u>, 526 U.S. at 845).

It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his claim that the trial court interfered with the assistance of stand-by counsel because this issue could have and should have been raised on direct appeal.  Accordingly, this claim has been procedurally defaulted.

Petitioner appears to argue that the ineffectiveness of appellate counsel, for failure to raise this claim on direct appeal, is cause for the default.  See Reply at 17.  The Florida Supreme Court addressed this ineffectiveness claim as follows:

> Appellate counsel's ineffectiveness is appropriately raised in a petition for writ of habeas corpus.  See Freeman v. State, 761 So.2d 1055, 1069 (Fla. 2000).  In order to grant habeas relief on the basis of ineffectiveness of appellate counsel, this Court must determine the following:
>
> > [F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
>
> Pope v. Wainwright, 496 So.2d 798, 800 (Fla. 1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla. 2000).  "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069.  Moreover, appellate counsel cannot be deemed ineffective for

62

failing to pursue a meritless claim. <u>See</u>
<u>Johnson v. Singletary</u>, 695 So.2d 263, 266-67
(Fla. 1996).

At the outset, Muhammad's
characterization of the facts involved with
the participation of his standby counsel are
incorrect. Despite Muhammad's claim that
standby counsel was not permitted to assist
him, at the start of the trial, the court
specifically informed Muhammad of Replogle's
presence in the courtroom and told Muhammad
that if he needed assistance, Replogle was
available.[17]  Moreover, before the jury was
instructed, the following discussion on

---

[17]
Specifically, the trial court
stated: "If you have any questions
during the course of the trial, I
know you have not used Mr. Replogle
of the Public Defender's Office much
in the past, but if you have any
questions, Mr. Replogle is present
to assist you." When Muhammad asked
the judge to clarify Replogle's
role, the judge responded, "If you
have any questions about legal
proceedings that are going on in the
courtroom, you may ask Mr. Replogle
a question. That seems clear
enough," to which Muhammad
responded, "Okay, Your Honor." The
next day, Muhammad objected "to the
Court's offer that I use Mr.
Replogle because if I'm not
mistaken, this Court entered an
order appointing the office of the
Public Defender as standby counsel,
not assistance of counsel." While
lacking some clarity, Muhammad's
objection was apparently based on
his desire to make it clear that he
did not acquiesce to the trial
court's offer to use Replogle in the
role of standby counsel.

<u>State v. Knight</u>, 866 So.2d at 1204 n.11.

Muhammad's decision not to utilize Replogle took place:

> MR. REPLOGLE:  I have offered to assist the defendant in reviewing the instructions.  Could we, perhaps, go into the library to do that rather than back to the holding cell?
>
> COURT:  You have consistently refused the Court's offer of Mr. Replogle's assistance.  I don't want to force anything upon you.
>
> MR. MUHAMMAD:  Your honor, I want to go on the record as understanding the Court.  I [sic] have entered an order denying my request for assistance of counsel.  I want the record to reflect, it is my understanding that the Court entered an order appointing Mr. Replogle as standby counsel in this case.  Mr. Replogle, he asked that did I want him to assist me in reviewing these instructions, and I stated to him that it was not necessary, that if he wanted to review these instructions, he is welcome to do so.  However, I don't want to intimate in any way that Mr. Replogle is assistant [sic] of counsel because Mr. Replogle has not assisted me in this cause.
>
> COURT:  I understand, that's what I wanted to record.  Mr. Replogle, under those circumstances, I don't think that you should.  Mr. Muhammad, I have asked Mr. Replogle to be here as standby counsel in the event that you cannot proceed.
>
> MR. MUHAMMAD:  Yes, sir.
>
> COURT:  I also asked him to be here in the event that you needed

some legal jury [sic] and that he
would provide that, upon your
request, only upon your request, in
that I didn't because of our
previous concerns about this that
you have a right to represent
yourself. The Court in no way is
forcing counsel upon you. As a
result, if you request it, Mr.
Replogle assisting you in going over
those jury instructions, he
indicated to me that he is willing
to do so, but without your request,
I ask Mr. Replogle to remain in his
seat away from you so it does not
appear that you are represented by
counsel or that he is participating
in any way.

Thus, it is clear from the record that
Muhammad did not want to appear to have
acquiesced to the limited role that his
standby counsel was performing. Moreover, the
court took seriously Muhammad's desire not to
insinuate that Replogle was providing him any
assistance. Muhammad's decision to not avail
himself of his designated standby counsel,
even though he was aware Replogle was
available, was his own, and not the trial
judge's decision. In McKaskle v. Wiggins, 465
U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122
(1984), the United States Supreme Court
stated:

First, the pro se defendant is
entitled to preserve actual control
over the case he chooses to present
to the jury. This is the core of
the Faretta right. If standby
counsel's participation over the
defendant's objection effectively
allows counsel to make or
substantially interfere with any
significant tactical decisions, or
to control the questioning of
witnesses, or to speak instead of
the defendant on any matter of

65

importance, the <u>Faretta</u> right is
eroded.

Second, participation by
standby counsel without the
defendant's consent should not be
allowed to destroy the jury's
perception that the defendant is
representing himself. The
defendant's appearance in the status
of one conducting his own defense is
important in a criminal trial, since
the right to appear *pro se* exists to
affirm the accused's individual
dignity and autonomy.

<u>Id</u>. at 178, 104 S.Ct. 944 (footnote omitted).

In the instant case, Muhammad's remark
that he "did not want to intimate" that
Replogle was providing him with any assistance
demonstrates that Muhammad did not want
Replogle's assistance and he wanted to make
sure that there was no insinuation or
appearance that Replogle was in any way acting
as his counsel. Any limitation that the trial
court put on standby counsel was apparently
based on Muhammad's repeatedly stated desire
that he be allowed his right to self-
representation unimpeded. Therefore, Muhammad
is not entitled to relief on this claim.

<u>State v. Knight</u>, 866 So.2d at 1203-06 (footnotes omitted).

This Court agrees that appellate counsel was not ineffective
for raising this claim because it would not have been meritorious
had it been raised on direct appeal. In addressing whether
appellate counsel was ineffective for failing to raise this claim
on direct appeal, the Florida Supreme Court found the underlying
claim (that the trial court interfered with the assistance of
stand-by counsel) to be without merit. Thus, Petitioner was not

66

prejudiced by appellate counsel's failure to raise this claim on direct appeal.  See United States v. Nyhuis, 211 F.3d at 1344. Accordingly, appellate counsel's failure to raise this claim on direct appeal cannot serve as cause for Petitioner's default.

In sum, Petitioner has not shown cause and prejudice for the default.  Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, his claim in subsection D of ground two is procedurally barred.

### C. Ground Three

Petitioner raises the following claim in ground three:

> MR. MUHAMMAD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE COURT ORDERED DEFENSE COUNSEL NOT TO PRESENT AN INSANITY DEFENSE AND THE COURT'S RULING DEPRIVED MR. MUHAMMAD OF HIS RIGHT TO DEFEND.  THE TRIAL COURT'S RULING VIOLATED THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Petition at 42.

As noted in the discussion of ground one, defense counsel filed a Notice of Intent to Claim the Defense of Insanity on February 25, 1981.  App. R, Vol. 2 at 213.  However, Petitioner repeatedly refused to be examined by the first two mental health experts appointed by the court to evaluate him.  Therefore, on February 26, 1982, the state filed a Motion to Exclude Defendant's Notice of Insanity Defense of Insanity [sic] and any Evidence Sought to Be Introduced Regarding the Defense of Insanity.  Id. at 292-93.

At a March 8, 1982, hearing, the trial judge stated that, as a sanction for Petitioner's refusal to be evaluated, he was inclined to prohibit the introduction of any expert testimony relating to the Petitioner's sanity and any medical records made and opinions given in relation to any previous civil commitment of the Petitioner.  App. R, Vol. 12, March 8, 1982, hearing transcript at 19-23.  At a subsequent hearing, defense counsel argued that Petitioner was not cooperating due to his mental illness.  App. R, Vol. 14, May 17, 1982, hearing transcript at 19-20.  The judge then stated that he would reserve ruling on the motion to exclude evidence of Petitioner's insanity until after the competency hearing.  Id. at 28.

As noted previously, at a May 20, 1982, hearing, the court found Petitioner was competent to stand trial.  On May 24, 1982, the court ruled on the motion to exclude evidence of Petitioner's insanity as follows:

> In view of the prior proceedings and the occurrences in the course of those proceedings, it is the order and judgment of the Court that under the authority of Wilford Bannister v. the State at 358 So.2d 1182[18] a decision of the Second District Court of Appeal of Florida on May 24th of 1976[, t]he

---

[18] Bannister v. State, 358 So.2d 1182, 1184 (Fla. 2d DCA 1978) (finding that "in appropriate circumstances, such as total noncooperation with any psychiatrist save his own, the court may properly refuse to admit any evidence propounded by the defendant relevant to the issue of his sanity.") (citing McMunn v. State, 264 So.2d 868 (Fla. 1st DCA 1972)).

> Defendant will not be permitted to offer any
> evidence relative to the issue of his sanity.

App. R, Vol. 14, May 24, 1982, hearing transcript at 6-7.

On June 7, 1982, the judge held a _Faretta_ hearing and determined that Petitioner could represent himself.  App. R, Vol. 14, June 7, 1982, hearing transcript.  Thereafter, on August 30, 1982, the state filed a Motion to Strike Defense of Insanity in its Entirety, including the Petitioner's own testimony regarding such a defense.  App. R, Vol. 3 at 406.  On September 3, 1982, the Petitioner, who was then proceeding _pro se_, filed Motion to Withdraw Notice of Intent to Claim Defense of Insanity.  _Id_. at 420-21.  In the motion, he stated that he did not intend to rely on the defense of insanity, that he did not intend to call any witnesses to show insanity, and therefore, he requested to withdraw the Notice of Intent to Claim the Defense of Insanity, filed by defense counsel on February 25, 1981.  _Id_. at 420.  The court granted Petitioner's motion on October 11, 1982.  App. R, Vol. 13, October 11, 1982, hearing transcript at 4.

Petitioner raised portions of his claims in ground three on direct appeal and other portions of his claims in ground three in his 3.850 motion.  To the extent the claims in this ground were raised on direct appeal, they have been waived.  To the extent the claims in this ground were raised in the 3.850 motion, they are procedurally barred.  An explanation follows.

69

On direct appeal, Petitioner argued that the trial court erroneously sanctioned him for refusing to be examined by court-appointed psychiatrists by prohibiting him from presenting any evidence of his insanity or eliciting any evidence regarding his insanity on cross-examination.  Petitioner argued that his rights under the Fifth, Sixth and Fourteenth Amendments were violated because he was prohibited from presenting an insanity defense, confronting his accusers and conducting a full cross-examination.  App. A at 31-35.  The Florida Supreme Court addressed this claim as follows:

> Appellate counsel next asserts error in the trial court's ruling that appointed trial counsel would be unable to present any evidence of insanity because of the defendant's refusal to cooperate with the court experts.  Subsequent to this ruling, Muhammad filed a pro se motion a month before trial to withdraw the notice of intent to raise the insanity defense.  The trial court permitted the state to withdraw its motion to strike the insanity defense and granted Muhammad's motion.  Muhammad was competent to make the motion and therefore he has waived any claim of error.

Muhammad v. State, 494 So.2d at 976.

The portions of ground three that were raised in state court on direct appeal have been, as the Florida Supreme Court found, waived.  The Eleventh Circuit has found that where an objection or motion is withdrawn before it is ruled on, the issue is waived on appeal.  In United States v. Broxton, 228 Fed.Appx. 909 (11th Cir. 2007) (per curiam), the defendant objected to a portion of the

70

presence investigation report (PSI), but then withdrew the objection at the sentencing hearing. On appeal, he asserted that the district court erred in considering that portion of the PSI in sentencing him. The Eleventh Circuit stated the following:

> Broxton raised this objection in the PSI Addendum but withdrew the objection at sentencing. The Supreme Court has explained that a "waiver is the intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (quotations omitted). Waiver differs from forfeiture, which is merely the failure to make a timely assertion of a right. Id. Unlike forfeiture, which permits review for plain error, waiver extinguishes appellate review because there is technically no "error" to correct. See id. at 732-33, 113 S.Ct. at 1777. As a result, Broxton's withdrawal of his objection below renders plain error review of that issue on appeal inapplicable. See, e.g., United States v. Masters, 118 F.3d 1524, 1526 (11th Cir. 1997) (per curiam). . . .

Id. at 914.

In Claim I(D) of his 3.850 motion, Petitioner claimed that, when the trial court prohibited him from presenting any evidence of his insanity, he was denied his Sixth Amendment right to compulsory process, the right to put on a defense, the right to effective assistance of counsel, the right to assistance of counsel at a critical stage of the proceeding and the right to due process of law. App. S, Vol. 1 at 188-96. Post-conviction counsel also asked the court to consider whether the trial court's sanction constituted cruel and unusual punishment and "whether or not Mr.

Muhammad is sanctionable for what amounts to a[n] invocation of his right against self incrimination." Id. at 193 n.4.  Finally, he stated that he did not waive his right to present an insanity defense and that he was mentally "incapable of forming a valid waiver in this regard." Id. at 196.  The trial court found that the issues raised in Claim I had been raised on direct appeal and were procedurally barred.  App. S, Vol. 7 at 1379, 1382.

In Claim XVI(F) of his 3.850 motion, Petitioner asserted that the preclusion of the insanity defense rendered defense counsel *per se* ineffective and denied the Petitioner his right to compulsory process as well as the right to put on a defense.  App. S, Vol. 2 at 327-42.  Again in this claim, post-conviction counsel asked the court to consider whether the trial court's sanction constituted cruel and unusual punishment and "whether or not Mr. Muhammad is sanctionable for what amounts to a[n] invocation of his right against self incrimination." Id. at 339 n.10.  He also argued again that there was no valid waiver of the right to present an insanity defense.  Id. at 342.  The trial court adjudicated the claim as follows:

> Claim XVI attacks what is described as erroneous pretrial rulings of the trial court. Some of these rulings have been directly reviewed by the Florida Supreme Court. The balance were never raised on appeal. Review by Motion to Vacate is precluded.
>
> . . . .

72

> Wherefore, the Court hereby enters its
> summary denial of the defendant's motion in
> all respects, finding that each claim is
> procedurally barred and no cause has been
> shown or alleged that would excuse the
> default.

App. S., Vol. 7 at 1382.

Petitioner appealed the denial of Claims I(D) and XVI(F) in Argument V in his appellate brief.  See App. F at 52-56.  The Florida Supreme Court affirmed the trial court's summary denial of these claims, finding that each issue was procedurally barred "because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal."  Muhammad v. State, 603 So.2d at 489.

The portions of ground three that were raised in state court in the 3.850 motion are procedurally barred.  As stated above, the trial court found that the claims were barred, and the Florida Supreme Court also found the issues to be procedurally barred.  Furthermore, as noted previously, the procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts.  See Smith v. State, 445 So.2d at 325 (finding that "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").[19]

---

[19]  The Court recognizes that ground three includes an ineffective assistance of counsel claim (that the preclusion of the

Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, for all of the above-stated reasons, his claims in ground three are either waived or procedurally barred.

### D. Ground Four

In ground four, Petitioner presents the following claim:

> MR. MUHAMMAD WAS DENIED HIS RIGHTS AS A <u>PRO SE</u> DEFENDANT AT THE GUILT/INNOCENCE AND SENTENCING PHASES OF TRIAL IN VIOLATION OF MR. MUHAMMAD'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS.

Petition at 50. He divides this ground into eight subsections.

Subsection A of this ground raises the following claim:

> COURT APPOINTED COUNSEL WAS NOT PERMITTED TO CONSULT WITH MR. MUHAMMAD AND SLANDEROUS ACCUSATIONS WERE MADE AGAINST COUNSEL[.]

<u>Id</u>.

---

insanity defense rendered defense counsel *per se* ineffective), which must normally be raised in a motion for post-conviction relief filed pursuant to Fla. R. Crim. P. 3.850. However, a controlling exception to this rule exists where the deficient performance of counsel and the prejudice to the defendant are "apparent on the face of the record." <u>Gore v. State</u>, 784 So.2d 418, 437 (Fla. 2001) (recognizing that a claim of ineffective assistance of counsel may be raised on direct appeal only where the ineffectiveness is apparent on the face of the record). Here, whether the trial court's preclusion of the insanity defense rendered defense counsel *per se* ineffective is an issue which is ascertainable from the face of the record. Thus, the trial court correctly found that this ineffectiveness claim should have been raised on direct appeal.

Subsection B of this ground states the following:

> DURING THE PENDENCY OF THE TRIAL TWO JUDGES
> WERE RECUSED DUE TO ACTIONS OF THE STATE[.]

Id. at 55.

Subsection C of this ground alleges the following:

> MR. MUHAMMAD WAS ASSURED ACCESS TO A LAW
> LIBRARY AT THE TIME OF WAIVER WHICH WAS
> SUBSEQUENTLY DENIED[.]

Id. at 56.

Subsection D of this ground raises the following claim:

> THE PRO SE DEFENDANT WAS DEPRIVED OF HAVING
> THE SERVICES OF AN INVESTIGATOR TO AID COUNSEL
> IN PREPARATION OF A DEFENSE[.]

Id. at 57.

Subsection E presents the following issue:

> THE COURT ERRED IN DENYING THE PRO SE MOTION
> TO TRANSCRIBE PRETRIAL HEARINGS[.]

Id. at 58.

Subsection F of this ground states:

> MR. MUHAMMAD WAS DENIED MEANINGFUL ACCESS TO
> THE COURT AND ITS PROCESSES TO COMPEL THE
> ATTENDANCE OF WITNESSES[.]

Id. at 59.

In subsection G of this ground, Petitioner alleges:

> MR. MUHAMMAD WAS NOT PRESENT AT CRITICAL
> STAGES OF THE PROCEEDINGS[.]

Id. at 62.

Finally, in subsection H of ground four, the following claim
is raised:

75

THE COURT ERRED IN FAILING TO PROVIDE MR.
MUHAMMAD WITH A COPY OF THE PRESENTENCE
INVESTIGATION REPORT AND AN OPPORTUNITY TO
REBUT THE CONTENTS THEREIN[.]

Id. at 67.

Respondents contend, and this Court agrees, that the claims
raised in this ground are procedurally barred.  The claims raised
in subsections A through H were raised in Claims VI, VII and X of
Petitioner's 3.850 motion.  See App. S, Vol. 2 at 222-48, 272-83.
The trial court found that all of these claims were procedurally
barred.  App. S, Vol. 7 at 1380-82.

On appeal, Petitioner raised these issues in Argument VIII.
See App. F at 64-78.  The Florida Supreme Court affirmed the trial
court's summary denial of these claims, finding that each issue was
procedurally barred "because the issue was not preserved at trial,
the issue was already raised and rejected on direct appeal, or the
issue could have or should have been raised on direct appeal."
Muhammad v. State, 603 So.2d at 489.  As noted previously, the
procedural bar imposed in Petitioner's case is firmly established
and regularly followed in the Florida courts.

Petitioner appears to contend that he has shown cause and
prejudice for the default of subsection C (regarding the denial of
access to the law library) and subsection G (regarding his alleged
absence during critical stages of the proceeding) because appellate
counsel was ineffective for failing to raise these issues on direct
appeal.  See Reply at 27.  In addressing Petitioner's claims in

ground two, the Court has already found that appellate counsel was not ineffective for failing to raise the claim regarding the denial of access to the law library.

In his state habeas petition, Petitioner alleged that appellate counsel was ineffective for failing to argue that he was absent during critical stages of the proceeding, and the Florida Supreme Court adjudicated the claim as follows:

> Next, Muhammad claims that his appellate counsel was ineffective for failing to raise on appeal the issue of two alleged incidents of ex parte communications with the State, which occurred during the penalty phase of Muhammad's trial.  FN 14  The first ex parte communication that Muhammad alleges occurred took place during the sentencing phase when the record reflects that Muhammad may have been removed from the courtroom before a presentencing investigation (PSI) was ordered. FN 15  Muhammad's second allegation of ex parte communication stems from a sidebar conference while the court was delivering its sentencing announcement.  FN 16

> > FN 14.  In a footnote, Muhammad's brief indicates that he was not present for the excusal of two jurors and that he was also absent when the manner of conducting voir dire was decided.  However, Muhammad has not identified with any specificity how he was absent for the excusal of the jurors and no such absence is apparent on the face of the record.  Moreover, the record also clearly reflects that the manner of voir dire was determined at an October 11, 1982, hearing. Not only was Muhammad present at this hearing, it was conducted after he had been allowed to proceed pro se and he was able to offer

77

objections to and arguments against the State's proposed method of conducting voir dire.

FN 15.  Immediately after Muhammad was finished presenting his closing argument, the record reflects that the trial court stated:

Thank you.  Take the defendant out first, the evidence and arguments of counsel, I find that the State has established at least several of the aggravating circumstances that are required by the law of the State of Florida with regard to the imposition of the death penalty beyond and to the exclusion of every reasonable doubt. I have found that the defendant has elected not to present any evidence of testimony with regard to any mitigating circumstances.  I have searched my mind and the record to find, during the course of the proceeding, that I cannot find that there are any mitigating circumstances.  I have listened to the defendant's arguments through today and find that he has failed to mention, during his argument, any mitigating circumstances in this matter.  On the other hand, I believe that the Court's responsibility in a matter like this is a grave one and a responsibility that cannot be hastily entered into. As a result, I have requested a presentence investigation to be independently prepared for the Court to review to determine where there exists any basis for any mitigating circumstances in this case.  At the conclusion of the presentence investigation and the filing of this Court, I will schedule a sentencing proceeding.

FN 16. Muhammad's argument suggests that he was not present at multiple sidebar discussions. However, he only identifies one instance with any specificity. During the pronouncement of sentence, after the court announced that it found no statutory mitigation and sentenced Muhammad to death, the following colloquy took place:

MR. HEBERT:   May we approach the Bench, Your Honor?

THE COURT:  Yes.

(Side-bar conference between the Court, Mr. Hebert and Mr. Elwell without reporter)

THE COURT:  For the record, the State Attorney's Office indicates that although there are no statutory mitigating circumstances, the court also can consider other outside mitigating circumstances. The Court finds no other outside mitigating circumstances.

MR. HEBERT: Thank you, Your Honor.

We disagree with Muhammad's claim that appellate counsel was ineffective. Notably, Muhammad was physically present in the courtroom in both instances and the record does not reflect that Muhammad was actually removed from the courtroom in the first instance. On neither occasion did Muhammad object to being excluded from the process, even though he was present in the courtroom and would have had the opportunity to do so.

Nevertheless, even if we were to conclude Muhammad was absent in both instances, we would deem these absences harmless. Muhammad claims his case is akin to <u>Proffitt v. Wainwright</u>, 685 F.2d 1227, 1255-1256 (11th Cir. 1982), where the Eleventh Circuit

determined that a defendant's absence during a
pretrial hearing was harmful error.  However,
the defendant in <u>Proffitt</u> was absent from the
entire hearing, at which the State and defense
were offering arguments on court-ordered
psychiatric reports.  <u>Id</u>. at 1257.  The
Eleventh Circuit refused to find the
defendant's absence harmless, in part because
if the defendant had been present he could
have informed his attorney and doctors that he
was taking antipsychotic medication during the
time he was being observed for the preparation
of the reports.  <u>Id</u>. at 1260-61.  In the
instant case, the alleged absences were of a
much more brief duration than that which
occurred in <u>Proffitt</u> and, while he may have
been briefly absent from proceedings, Muhammad
was present in the courtroom and would have
understood from the context that he either
should object or present arguments.  Assuming
he was taken from the courtroom in the first
instance, Muhammad's absence from the brief
portion of the trial where the judge ordered
the PSI was harmless.  In the second instance,
even if Muhammad was absent from the sidebar,
the court implicitly presented Muhammad an
opportunity to respond by explaining what had
occurred during the sidebar.  Given Muhammad's
ineffectual penalty phase argument and failure
to present any mitigation, his presence on
either occasion would not have served the
purpose that the defendant's presence would
have served in <u>Proffitt</u>.

Because the result of either alleged
absence was harmless, appellate counsel's
decision not to appeal this issue is not "of
such magnitude as to constitute a serious
error or substantial deficiency falling
measurably outside the range of professionally
acceptable performance."  <u>Pope</u>, 496 So.2d at
800.

<u>State v. Knight</u>, 866 So.2d at 1206-07.

This Court agrees that appellate counsel was not ineffective

for failing to raise this claim because it would not have been

80

meritorious had it been raised on direct appeal. In addressing whether appellate counsel was ineffective for failing to raise the issue on direct appeal, the Florida Supreme Court found the underlying claim (regarding Petitioner's alleged absence during critical stages of the proceeding) to be without merit. Thus, Petitioner was not prejudiced by appellate counsel's failure to raise this claim on direct appeal. Accordingly, appellate counsel's failure to raise this claim on direct appeal cannot serve as cause for Petitioner's default.

In sum, Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, his claims in ground four are procedurally barred.

### E. Ground Five

Petitioner presents the following claim in ground five of the Petition:

> THE STATE'S MISCONDUCT THROUGHOUT THE GUILT AND PENALTY PHASES DENIED MR. MUHAMMAD HIS RIGHTS TO A FUNDAMENTALLY FAIR AND RELIABLE CAPITAL TRIAL AND SENTENCING DETERMINATION AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.

Petition at 96.

In subsection A of ground five, Petitioner alleges a <u>Brady</u> violation. <u>Id</u>. at 69-82. In subsection B of ground five, Petitioner raises other claims of prosecutorial misconduct. <u>Id</u>. at 82-86. In subsection C of ground five, Petitioner alleges that

81

the state orchestrated the presence of numerous uniformed officers from the Department of Corrections at the trial. Id. at 86-90.

Respondents contend, and this Court agrees, that several of the claims raised in this ground are procedurally barred. Insofar as Petitioner claims in subsection A that the state failed to disclose prison records detailing his history of mental illness in state court, this claim was never exhausted in state court. See Response at 144-45. It would be futile to dismiss this case to give Petitioner the opportunity to exhaust this claim because it should have been raised in his 3.850 motion, and any motion for post-conviction relief filed at this time would be barred as successive and untimely. Therefore this portion of subsection A has been procedurally defaulted.

Furthermore, to the extent Petitioner argues in subsection A that the state failed to turn over photographs or to disclose the existence of any statements other than the alleged exculpatory statements of prison employees who witnessed the offense, the claim is procedurally barred. This portion of subsection A was raised in Claim VIII of the 3.850 motion, and the trial court found it to be procedurally barred. App. S, Vol. 2 at 248-55; App. S, Vol. 7 at 1380-82. The Florida Supreme Court specifically found all claims raised in the 3.850 motion to be procedurally barred, with the exception of the alleged failure to disclose the allegedly

exculpatory statements of prison employees who witnessed the offense.  Muhammad v. State, 603 So.2d at 489.

Additionally, the claims raised in subsections B and C were raised in Claim X of Petitioner's 3.850 motion.  See App. S, Vol. 2 at 272-83.  The trial court found that these claims were procedurally barred.  App. S, Vol. 7 at 1380-82.  On appeal, Petitioner raised these issues in Argument IX.  See App. F at 82-90.  The Florida Supreme Court affirmed the trial court's summary denial of these claims, finding that each issue was procedurally barred "because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal."  Muhammad v. State, 603 So.2d at 489.  As noted previously, the procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts.

Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, his claims in ground five are procedurally barred, with the exception of the Brady claim, alleging that the state failed to disclose exculpatory statements of prison employees who witnessed the offense.

As stated previously, on May 8, 2001, after conducting an evidentiary hearing on the Brady claim, the trial court entered an

83

order denying relief with respect to the guilt phase, but granting
relief with respect to the sentencing phase.   App. T., Vol. 5 at
904-11.  On appeal, the Florida Court addressed the <u>Brady</u> claim as
follows:

> After a protracted exchange of pleadings
> concerning public records requests, the trial
> court held an evidentiary hearing on the <u>Brady</u>
> claim on June 12 and 13, 2000.   At the
> hearing, the defense introduced several
> exhibits relating to alleged <u>Brady</u> evidence.
> In particular, Muhammad introduced various
> documents that were apparently part of the
> Department of Corrections (DOC) investigatory
> file on Burke's murder.   The documents
> included employee and inmate statements that
> were taken during the course of the
> investigation.   Among these documents was a
> letter dated June 2, 1981, from L.E. Turner,
> an investigator with DOC, to the prosecutor in
> the case, Thomas Elwell.[20]   In the letter,
> Turner indicated that he had, at Elwell's
> request, reinterviewed and received the
> statements of Florida State Prison (FSP)
> personnel who had the closest contact with
> Muhammad immediately following the murder of
> Officer Burke.   Attached to the letter were
> seven typed unsigned, undated, and
> unattributed statements.[21]   Additionally, at
> the evidentiary hearing, Muhammad introduced
> testimony from a number of witnesses, FN 5
> including several witnesses that testified as
> to the import of the June 2, 1981, letter and
> its attached statements.
>
>> FN 5.   Muhammad introduced the
>> testimony of twelve individuals.
>> Louis E. Turner, a DOC investigator
>> at the time of the Burke murder and
>> the author of the letter to the

---

[20] <u>See</u> App. T, Vol. 15 at Defendant's Exhibit 2.

[21] <u>See</u> App. T, Vol. 15 at Defendant's Exhibit 1.

prosecutor, testified and
authenticated that a number of
documents appeared to be from his
investigatory file on the case.
Leonard Ball, Edward Sands, and Ed
Sobach were officials with FSP and
DOC who testified as to the state of
the files in the Burke murder as
well as the possible location of
documents that appeared to be
missing from the investigatory
files. Darrell Brewer, who worked
for FSP as a guard at the time of
the murder, testified that
Muhammad's eyes were open wide when
he observed him shortly after the
murder. Arthur Jones, Lenson
Hargrave, and Boyd McCaskill were
inmates that saw Muhammad around the
time of the crime. They each
testified as to their observations
of Muhammad around the time of the
crime. However, none had previously
shared their observations with the
State. Brad Fisher was a clinical
forensic psychologist, who had
examined Muhammad. He testified
that the June 2, 1981, letter and
attached statements would have been
useful in diagnosing Muhammad's
potential mental illness and would
have supported mitigation. Reed
Replogle was Muhammad's standby
counsel at the time of his trial.
He testified that he had no contact
with Muhammad during the trial and
he alleged that the judge had given
him specific orders not to approach
the defendant. Stephen Bernstein was
Muhammad's counsel before he elected
to proceed pro se. Bernstein
testified that he and Muhammad
differed on trial strategy in that
he wanted to present an insanity
defense but Muhammad refused.
Bernstein had also examined the
<u>Brady</u> material and he said it would
have been useful in preparing for

guilt phase and penalty phase issues. Bill Salmon testified as an expert on defense in the State of Florida. He opined that the alleged <u>Brady</u> material would have been useful at each stage of the trial.

After the evidentiary hearing, the trial court entered an order dated May 8, 2001, which found that Muhammad was entitled to a new sentencing hearing, and denied all other requested relief.

II. 3.850 MOTION

A. State's Appeal

Initially, we would note that the scope of our previous remand was narrow. Specifically, we remanded for an evidentiary hearing to determine whether the State failed "to disclose exculpatory employee statements in violation of <u>Brady v. Maryland</u>." <u>Muhammad II</u>, 603 So.2d at 489. Accordingly, the trial court recognized that much of the evidence that Muhammad introduced at the evidentiary hearing and the arguments associated therewith were not germane to the issue at hand. In fact, given the large amount of additional information that was introduced, it was unclear from the evidentiary hearing and from the trial court's order which evidence Muhammad was alleging was <u>Brady</u> evidence. At oral argument, Muhammad identified the documents that his <u>Brady</u> claim was premised on: the June 2, 1981, letter from Turner and the statements attached to it.

The State is required to disclose to the defense evidence in its possession or control that is favorable to the accused or that tends to negate the guilt of the accused. <u>See United States v. Bagley</u>, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The defendant must prove three elements to establish a Brady claim: "[1] The evidence at issue must be favorable

86

to the accused, either because it is
exculpatory, or because it is impeaching; [2]
that evidence has been suppressed by the
State, either willfully or inadvertently; and
[3] prejudice must have ensued." <u>Strickler v.
Greene</u>, 527 U.S. 263, 281-82, 119 S.Ct. 1936,
144 L.Ed.2d 286 (1999); <u>see also</u> <u>Way v. State</u>,
760 So.2d 903, 910 (Fla. 2000). In assessing
the prejudice element of a <u>Brady</u> claim, a
court should determine whether the favorable
evidence could "reasonably be taken to put the
whole case in such a different light as to
undermine confidence in the verdict."
<u>Strickler</u>, 527 U.S. at 290, 119 S.Ct. 1936
(quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 435,
115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); <u>see
also</u> <u>Occhicone v. State</u>, 768 So.2d 1037, 1041
(Fla. 2000). Furthermore, in reviewing
whether prejudice has ensued, "[t]he question
is not whether the defendant would more likely
than not have received a different verdict
with the evidence, but whether in its absence
he received a fair trial, understood as a
trial resulting in a verdict worthy of
confidence." <u>Strickler</u>, 527 U.S. at 289-90,
119 S.Ct. 1936.

The trial court's order does not analyze
Muhammad's claim according to the three
elements necessary to prove a <u>Brady</u> claim.
Moreover, it is not clear from the evidence
adduced at the evidentiary hearing that the
State suppressed the letter and its attached
statements, either willfully or inadvertently.
Bernstein, Muhammad's attorney before he
elected to proceed pro se, testified that he
did not recall the letter or its attached
statements and that he probably would have
remembered receiving such documents because he
would have turned them over to mental health
experts. However, Bernstein also acknowledged
that he had forgotten receiving other
documents that the State could prove had been
turned over.

Nevertheless, even if we were to assume
that the State had either willfully or
inadvertently suppressed the letter and its

87

attached statements, we would still hold that
Muhammad has not demonstrated that he was
prejudiced and thus, his claim fails under the
third prong of the <u>Brady</u> test.  At best, the
seven unattributed, unsigned, and undated
statements contain limited and conflicting
information regarding Muhammad's state of mind
around the time of the murder.  Moreover,
although the descriptions of Muhammad in the
statements were unsigned, they were consistent
with the descriptions given by FSP personnel
who were deposed by Bernstein.  Thus, as the
State notes, the information contained in the
allegedly suppressed employee statements was
cumulative to information from employee
depositions.  The record reflects that those
depositions were turned over to Muhammad, yet
he did not use them to present any mental
mitigation.  Under these circumstances, no
likelihood that Muhammad would have used the
similar and cumulative information in the June
2, 1981, letter and its attachments to argue
mental mitigation has been established.  In
addition, there has been no demonstration that
the allegedly withheld documents contained any
information not already disclosed to Muhammad
by other means.  Therefore, because Muhammad
did not suffer any prejudice from the alleged
withholding of the letter and its attached
statements, the trial court erred in ordering
a new penalty phase.

B. Muhammad's Appeal

Muhammad's cross-appeal is closely
related to the issues appealed by the State.
Namely, Muhammad alleges that the evidence of
the letter and employee statements requires
his conviction to be vacated.  Muhammad argues
that the lower court did not consider the
impact of this evidence upon the guilt phase
with regard to issues such as whether he would
have pursued an insanity defense and whether
he was competent to proceed pro se.

Although our opinion in Muhammad II
indicated that the trial court had not
addressed the merits of "whether the alleged

88

> Brady violation would require a new trial,"
> Muhammad II, 603 So.2d at 490, the nature of
> the documents that were presented on remand
> would not require either a new sentencing
> phase or a new trial. Thus, we agree with the
> trial court's denial of guilt phase relief.
> Even if the documents in question were
> suppressed by the State, they would not have
> provided any novel information that would have
> had any impact on guilt phase issues. We
> previously concluded, after explaining in some
> detail in Muhammad's direct appeal, that the
> trial court properly found that Muhammad was
> (1) competent to stand trial, (2) competent to
> proceed pro se, and (3) competent to withdraw
> the notice of intent to raise an insanity
> defense. Muhammad I, 494 So.2d at 974-76.
> Nothing contained in the alleged Brady
> documents causes us to question these
> conclusions. As we recognized, Muhammad
> "conducted his defense as well as any layman
> could be expected to do." Id. at 976.
> Therefore, the lower court properly denied
> relief regarding the guilt phase.

State v. Knight, 866 So.2d at 1200-03.

This Court must evaluate the Florida Supreme Court's adjudication of this claim pursuant to AEDPA. The Court notes that the Florida Supreme Court correctly identified Brady as the controlling legal authority. Upon review, the state court's decision did not contradict governing federal law. In addition, there is no United States Supreme Court case that is materially indistinguishable from the facts of this case. Next, the Court must inquire as to whether the state court's application of clearly established federal law was objectively reasonable. The Court finds that the state court reasonably applied the law to the facts of Petitioner's case.

Petitioner is not entitled to relief on this claim because the Florida Supreme Court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Deference will be given to the Florida Supreme Court's ruling.

### F. Ground Six

In ground six, Petitioner presents the following claim:

> MR. MUHAMMAD'S DEATH SENTENCE IS NOT RELIABLE AND MUST BE VACATED BECAUSE MR. MUHAMMAD WAS NOT COMPETENT TO WAIVE HIS SENTENCING JURY, BECAUSE THE TRIAL COURT FAILED TO CONDUCT PENALTY PROCEEDINGS BEFORE AN ADVISORY JURY, AND BECAUSE THE RESULTING SENTENCE OF DEATH WAS CONTRARY TO THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

Petition at 91.

Petitioner raised the issues in this ground in Claim IV of his 3.850 motion.  App. S, Vol. 2 at 205-11.  The trial court found that these claims were procedurally barred.  App. S, Vol. 7 at 1379-82.  Petitioner raised these issues on appeal.  See App. F at 59-64.  The Florida Supreme Court affirmed the trial court's summary denial of these claims, finding that each issue was procedurally barred "because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal." Muhammad v. State, 603 So.2d at 489.  As noted previously, the

90

procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts.

Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, his claims in ground six are procedurally barred.

### G. Ground Seven

In ground seven, Petitioner raises the following claim:

> THE TRIAL COURT ERRED BY FAILING TO CONSIDER MR. MUHAMMAD'S MENTAL DEFICIENCIES AS NONSTATUTORY MITIGATING CIRCUMSTANCES AND ERRED IN CONSIDERING NONSTATUTORY AGGRAVATING FACTORS, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

Petition at 96.

Petitioner raised this claim in state court as Issue V on direct appeal and as Claim XII in his 3.850 motion.  App. A at 37-39; App. S, Vol. 2 at 287-301.  Respondents assert, and this Court agrees, that insofar as Petitioner's claims in this ground were not raised on direct appeal and were raised for the first time in his 3.850 motion, the claims are procedurally barred.

When Petitioner raised these claims in his 3.850 motion, the trial court found that they were procedurally barred.  App. S, Vol. 7 at 1380-82.  The Florida Supreme Court affirmed the trial court's summary denial of these claims, finding that each issue was procedurally barred "because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the

issue could have or should have been raised on direct appeal." Muhammad v. State, 603 So.2d at 489.  As noted previously, the procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts.

Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, to the extent his claims in this ground were not raised on direct appeal and were raised for the first time in his 3.850 motion, they are procedurally barred.

The portion of Petitioner's claim that was raised on direct appeal was adjudicated by the Florida Supreme Court as follows:

> Appellate counsel also asserts error in the trial court's failure to find that Muhammad's mental condition was a mitigating factor.  However, based on Muhammad's position regarding responsibility for his actions, the trial court was not obliged to infer a mitigating circumstance, contrary to the wishes of a competent defendant proceeding pro se who neither requested mitigation on these grounds nor presented any evidence to support such a conclusion.  The trial judge properly considered and rejected finding that the defendant was under the influence of extreme mental or emotional disturbance or suffered from a substantial impairment of the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Muhammad v. State, 494 So.2d at 976.

This Court must evaluate the Florida Supreme Court's adjudication of this claim pursuant to AEDPA.  Upon review, the

92

state court's decision did not contradict governing federal law. In addition, there is no United States Supreme Court case that is materially indistinguishable from the facts of this case. Next, the Court must inquire as to whether the state court's application of clearly established federal law was objectively reasonable. The Court finds that the state court reasonably applied the law to the facts of Petitioner's case.

Petitioner is not entitled to relief on this claim because the Florida Supreme Court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 165-72. Deference will be given to the Florida Supreme Court's ruling.

## H. Ground Eight

In ground eight, Petitioner presents the following claim:

> MR. MUHAMMAD WAS DEPRIVED OF HIS RIGHTS TO DUE
> PROCESS AND EQUAL PROTECTION UNDER THE FIFTH,
> SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS
> BECAUSE THE MENTAL HEALTH EXPERT RETAINED TO
> EVALUATE HIM BEFORE TRIAL FAILED TO CONDUCT A
> PROFESSIONALLY COMPETENT AND APPROPRIATE
> EVALUATION, AND BECAUSE THE STATE FAILED TO
> DISCLOSE CRUCIAL INFORMATION, DEFENSE COUNSEL
> FAILED TO RENDER EFFECTIVE ASSISTANCE
> DEPRIVING HIM OF A FAIR, INDIVIDUALIZED, AND
> RELIABLE CAPITAL SENTENCING DETERMINATION.

Petition at 105.

In subsection A of this ground, Petitioner asserts that the psychiatric evaluation was professionally inadequate in violation of <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985). <u>Id</u>. at 105-11. In subsection B of this ground, he alleges he received ineffective assistance of counsel because counsel failed to ensure that Petitioner received an adequate psychiatric evaluation and failed to investigate, prepare and present evidence of his client's mental incompetence during the <u>Faretta</u> hearing. <u>Id</u>. at 111-13. In subsection C, Petitioner claims that the psychiatric evaluation was improperly obtained and used. <u>Id</u>. at 113-15.

Petitioner raised this ground in state court in Claim I of his 3.850 motion. App. S, Vol. 2 at 152-87. The trial court found that the claim was procedurally barred. App. S, Vol. 7 at 1378-79, 1382. The Florida Supreme Court affirmed the trial court's summary denial of these claims, finding that each issue was procedurally barred "because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal." <u>Muhammad v. State</u>, 603 So.2d at 489. As noted previously, the procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts.

Petitioner alleges that because Petitioner "also raised his claim in the context of ineffective assistance" he "has demonstrated the required cause and prejudice for this Court to

review the ground on the merits."  See Reply at 45.  In his 3.850

motion, Petitioner alleged that counsel was ineffective for the

following reasons:

> He neither obtained nor provided the expert
> with the history of head injury or the records
> indicating an abnormal skull series study.  No
> request was made that the expert consider
> mitigation.  In short, counsel failed to take
> the steps necessary to assure that his client
> would receive the expert mental health
> assistance to which he was entitled.  While
> Mr. Muhammad still had counsel to protect him,
> his attorney failed to protect.

App. S, Vol. 1 at 170.

He did not allege in state court that counsel was ineffective

for failing to investigate, prepare and present evidence of his

client's mental incompetence during the Faretta hearing.  Thus,

insofar as he alleges here that counsel was ineffective for failing

to investigate, prepare and present evidence of his client's mental

incompetence during the Faretta hearing, his claim has not been

exhausted.  It would be futile to dismiss this case to give

Petitioner the opportunity to exhaust this portion of his

ineffectiveness claim in state court because it should have been

raised in his 3.850 motion and any motion for post-conviction

relief that would be filed at this time would be successive and

untimely.

Petitioner has not shown cause and prejudice for the default.

Additionally, he has not shown that he is entitled to the

fundamental miscarriage of justice exception.  Thus, to the extent

he alleges here that counsel was ineffective for failing to investigate, prepare and present evidence of his client's mental incompetence during the <u>Faretta</u> hearing, his claim is procedurally barred.   Therefore, it cannot serve as cause for the default because procedurally defaulted claims of ineffective assistance of counsel cannot serve as cause to excuse the default of another substantive claim.   <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000).

The exhausted portion of Petitioner's ineffectiveness claim in this ground is without merit.   Insofar as Petitioner claims that counsel should have provided Dr. Barnard and Dr. Carrera with Petitioner's history of head injury and the records indicating he had an abnormal skull series study or should have requested these two experts to consider his mental health in mitigation, Petitioner was not prejudiced by this failure because he refused to speak with these two doctors; therefore, they were unable to evaluate him.

Insofar as Petitioner claims that counsel was ineffective for failing to provide Dr. Amin with Petitioner's history of head injury and the records indicating he had an abnormal skull series study, this claim is without merit.   Petitioner's first defense counsel, Susan Carey, testified in a May 11, 1982, deposition that she chose Dr. Amin as the defense mental health expert because he had previously seen the Petitioner in connection with an executive clemency proceeding, he had examined Petitioner previously, and he

96

had already read Petitioner's psychiatric history as set forth during his first murder trial.  App. S, Vol. 5 at 843-44.  Since counsel knew that Dr. Amin had all these previous records, the alleged failure of counsel to provide Dr. Amin with Petitioner's history of head injury and the records indicating he had an abnormal skull series study[22] does not rise to the level of deficient performance.

Furthermore, Petitioner was not prejudiced by counsel's alleged failure to request Dr. Amin to consider Petitioner's mental health in mitigation since Petitioner elected to not present any mental health issues at the guilt or penalty phases.  Thus, this ineffectiveness claim is without merit because Petitioner has not shown both deficient performance and resulting prejudice. Accordingly, this ineffectiveness claim cannot serve as cause and prejudice for Petitioner's default.

Finally, Petitioner argues that "ineffective assistance of counsel in the failure to timely present the issue in state court will constitute cause."  Reply at 45.  Petitioner never exhausted such an ineffectiveness claim in state court.  Therefore, this ineffectiveness claim cannot serve as cause for the default.

---

[22] In any event, the Court notes that, according to the testimony at the evidentiary hearing on Petitioner's 3.850 motion, Petitioner's brain scans, skull series x-rays and electrocephalograms were basically normal.  App. T, Vol. 6 at 107.

In sum, Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, this ground is procedurally barred.

### I. Ground Nine

In ground nine, Petitioner presents the following claim:

> THE TRIAL COURT'S FAILURE TO GRANT MR. MUHAMMAD'S MOTIONS FOR CHANGE OF VENUE AND FOR INDIVIDUAL, SEQUESTERED VOIR DIRE DEPRIVED HIM OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

Petition at 116.

Respondents contend, and this Court agrees, that this claim is procedurally barred. Petitioner raised this issue in Claims X and XVII of his 3.850 motion. App. S, Vol. 2 at 276, 352-59. The trial court found these claims were procedurally barred. App. S, Vol. 7 at 1380, 1382. The Florida Supreme Court affirmed the trial court's summary denial of these claims, finding that each issue was procedurally barred "because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal." Muhammad v. State, 603 So.2d at 489. As noted previously, the procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts.

Petitioner claims that the ineffective assistance of appellate counsel (for failure to raise this claim on direct appeal)

98

constitutes cause for his default.   <u>See</u> Reply at 49.   Petitioner

raised this ineffective assistance of appellate counsel claim in

his state habeas petition, and the Florida Supreme Court

adjudicated the claim as follows:

CHANGE OF VENUE AND METHOD OF VOIR DIRE

> Next, Muhammad argues that appellate
> counsel was ineffective for failing to raise a
> claim on direct appeal regarding change of
> venue and individualized voir dire of members
> of the jury pool.  In selecting the jury, the
> trial court utilized a hybrid method of jury
> selection whereby the court would ask if any
> member of the jury had heard anything about
> the case, to which the members would respond
> simply affirmatively or negatively.  Those who
> responded affirmatively were then sent out and
> individualized voir dire was conducted with
> those members.
>
> With regard to when a change of venue is
> necessary to protect a defendant's rights, the
> Court has provided the following test:
>
>> The test for determining a change of
>> venue is whether the general state
>> of mind of the inhabitants of a
>> community is so infected by
>> knowledge of the incident and
>> accompanying prejudice, bias, and
>> preconceived opinions that jurors
>> could not possibly put these matters
>> out of their minds and try the case
>> solely on the evidence presented in
>> the courtroom.
>
> <u>Rolling v. State</u>, 695 So.2d 278, 284 (Fla.
> 1997) (quoting <u>McCaskill v. State</u>, 344 So.2d
> 1276, 1278 (Fla. 1977)).  When a motion for
> change of venue is filed a trial court should
> evaluate "(1) the extent and nature of any
> pretrial publicity; and (2) the difficulty
> encountered in actually selecting a jury."
> <u>Id</u>. at 285.  Furthermore, the existence of

99

pretrial publicity in a case does not necessarily lead to an inference of partiality or require a change of venue; rather, pretrial publicity must be examined with attention to a number of circumstances, including (1) when the publicity occurred in relation to the time of the crime and the trial; (2) whether the publicity was made up of factual or inflammatory stories; (3) whether the publicity favored the prosecution's side of the story; (4) the size of the community exposed to the publicity; and (5) whether the defendant exhausted all of his peremptory challenges in seating the jury. See Foster v. State, 778 So.2d 906, 913 (Fla. 2001); Rolling, 695 So.2d at 285. Furthermore, decisions on a motion for a change of venue are firmly within the trial court's discretion and will not be overturned on appeal absent a palpable abuse of discretion. Kearse v. State, 770 So.2d 1119, 1124 (Fla. 2000).

In the postconviction context where the defendant is claiming that trial counsel was somehow ineffective with regard to venue, a court can examine counsel's performance for deficiency and, when assessing the prejudice prong of Strickland:

> [T]he defendant must, at a minimum "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000); see also Provenzano v. Dugger, 561 So.2d 541, 545 (Fla. 1990) (concluding that counsel was not ineffective for failing to renew the motion for change of venue because it was a tactical decision and because "it is most unlikely that a change of venue would have been granted because there were no

undue difficulties in selecting an
impartial jury").

Wike v. State, 813 So.2d 12, 18 (Fla. 2002).

In the instant case any omission by
appellate counsel in failing to present an
issue regarding venue on appeal is not "of
such magnitude as to constitute a serious
error or substantial deficiency falling
measurably outside the range of professionally
acceptable performance." Pope, 496 So.2d at
800. Although there may have been some
publicity surrounding the murder of Officer
Burke, an independent review of the record
demonstrates that there was no difficulty in
seating the jury. Under these circumstances,
the trial court's decision to deny Muhammad's
various motions for change of venue and select
the jury in Bradford County does not amount to
a "palpable" abuse of discretion. See Kearse,
770 So.2d at 1124. Therefore, any deficiency
in failing to raise this issue on appeal does
not appear to be so serious or substantial
that appellate counsel's failure to raise the
issue fell outside the range of professionally
acceptable performance.

With regard to the issue of individual
voir dire, Muhammad's argument is without
merit. The reason that Muhammad requested
individual voir dire was to prevent members of
the venire from tainting others with any
knowledge of the case. The selection process
that the trial court utilized, which allowed
the judge to test for previous knowledge of
the case without tainting the jury pool,
addressed Muhammad's concerns. Under these
circumstances, appellate counsel was not
ineffective for failing to raise this claim.

State v. Knight, 866 So.2d at 1208-10.

For the reasons set forth above by the Florida Supreme Court,

this Court agrees that appellate counsel was not ineffective for

failing to raise this claim on direct appeal. Thus, Petitioner has

101

not established cause for his default.  In sum, Petitioner has not

shown cause and prejudice for the default.  Additionally, he has

not shown that he is entitled to the fundamental miscarriage of

justice exception.  Thus, this ground is procedurally barred.

### J. Ground Ten

In his final ground for relief, Petitioner raises the

following claim:

> MR. MUHAMMAD'S SIXTH, EIGHTH AND FOURTEENTH
> AMENDMENT RIGHTS WERE VIOLATED BECAUSE NO
> RELIABLE TRANSCRIPT OF HIS CAPITAL TRIAL
> EXISTS AND CRITICAL RECORDS WERE NOT INCLUDED
> IN THE RECORD ON DIRECT APPEAL, PRECLUDING
> RELIABLE APPELLATE REVIEW.

Petition at 124.

Respondents contend, and this Court agrees, that this claim is

procedurally barred.  Petitioner raised this issue in Claim X of

his 3.850 motion.  App. S, Vol. 2 at 236-48.  The trial court found

that the claim was procedurally barred because it could have been

raised on direct appeal.  App. S, Vol. 7 at 1380, 1382.

The Florida Supreme Court affirmed the trial court's summary

denial of this claim, finding that the issue was procedurally

barred "because the issue was not preserved at trial, the issue was

already raised and rejected on direct appeal, or the issue could

have or should have been raised on direct appeal."  Muhammad v.

State, 603 So.2d at 489.  As noted previously, the procedural bar

imposed in Petitioner's case is firmly established and regularly

followed in the Florida courts.

102

Petitioner has not shown cause and prejudice for the default. Additionally, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, this ground is procedurally barred.

Even assuming the ground is not procedurally barred, it is without merit for the reasons stated by the Respondents in their Response.  <u>See</u> Response at 204-12.

### VI. Conclusion

This Court agrees with the Florida Supreme Court that "Muhammad's competency is the primary question in this case." <u>Muhammad v. State</u>, 494 So.2d at 972.  Most of his other grounds for relief are impacted by the competency determination.  Although Petitioner had a history of mental illness, this Court is convinced, after an exhaustive review of the record, that the state courts' findings regarding Petitioner Muhammad's competency to stand trial and to waive his right to the assistance of counsel are supported by the record.  As noted by the trial court, Petitioner may have made a mistake by electing to proceed *pro se*, but he had the right to do so.  He also may have made mistakes when he failed to pursue an insanity defense, waived his right to a jury at the penalty phase of the proceedings, and failed to present mental health matters in mitigation.  However, given the state courts' findings of competency, he is bound by these decisions.

Any claims not specifically addressed are found to be without merit.  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of March, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

ps 11/16
c:
Linda McDermott, Esquire
D. Todd Doss, Esquire
Assistant Attorney General Katherine V. Blanco

104